FILED

2015 Mar-10  PM 03:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **VIRGINIA PRINCE, on behalf of herself and all others similarly situated,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | **Case No.: 1:14-CV-1708-VEH** |
| **v.** | ) ) | |
| **THE CATO CORPORATION,** | ) ) | |
| **Defendant.** | | |

---

## MEMORANDUM OPINION AND ORDER

This claim was filed pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, by the plaintiff, Virginia Prince, "on behalf of herself and all other[s] similarly situated," against the defendant, The Cato Corporation. (Doc. 1). The action is "brought to recover unpaid compensation owed to the named [p]laintiff and all current employees and former employees of Cato who are similarly situated to the named [p]laintiff." (Doc. 1 at 2). The plaintiff alleges that "Cato has had a uniform policy and practice of consistently requiring its employees titled 'Store Manager' or 'Acting Store Manager' to work over 40 hours per week for a salaried amount without overtime compensation." (Doc. 1 at 2).

The case comes before the court on the plaintiff's motion to facilitate notice of

this action to other employees who may desire to opt-in to this action. (Doc. 7). For the reasons stated herein, the motion will be **DENIED without prejudice**.

## I.     STANDARD FOR CERTIFICATION OF A COLLECTIVE ACTION

Judge Blackburn, in this district, fairly recently, and thoroughly, explained the standard as follows:

> The FLSA authorizes a collective action under the following conditions:
>
> > An action ... may be maintained against any employer ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed with the court in which such action is brought.
>
> 29 U.S.C. § 216(b). A district court, in its discretion, may conditionally certify a collective action when to do so would permit the "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged ... activity."*Hoffman–La Roche, Inc. v. Sperling*, 493 U.S. 165, 169–170 (1989)."A plaintiff has the burden of showing a 'reasonable basis' for [her] claim that there are other similarly[-]situated employees."*Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir.2008) (citations omitted)."The FLSA itself does not define how similar the employees must be before the case may proceed as a collective action. And [the Eleventh Circuit has] not adopted a precise definition of the term."*Id.* at 1259.The Eleventh Circuit, however, has stated that "a unified policy, plan, or scheme of discrimination may not be required to satisfy the more liberal 'similarly-situated' requirement of § 216(b).*Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1219 (*quoting Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir.1996)). Nevertheless, a plaintiff "must make some rudimentary showing of commonality between the basis for his claims and that of the potential

claims of the proposed class, beyond the mere facts of job duties and pay provisions...."*Marsh v. Butler County Sch. Sys.*, 242 F.Supp.2d 1086, 1093 (M.D.Ala.2003); *see also Fox v. Tyson Foods, Inc.*, No. 4:99–CV–1612–VEH, 2006 WL 6012784, at *4 (N .D. Ala Nov. 15, 2006); *Williams v. Accredited Home Lenders, Inc.*, No. 1:05–CV1681–TWT, 2006 WL 2085312, at *3 (N.D.Ga. July 25, 2006); *Holt v. Rite Aid Corp.*, 333 F.Supp.2d 1265, 1270 (M .D. Ala 2004).

The Eleventh Circuit has held that "before facilitating notice, a district court should satisfy itself that there are other employees who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions."*Morgan*, 551 F.3d at 1259–60 (internal quotations and citation omitted).

> The initial issue is whether Plaintiffs have made the requisite showing to justify conditional certification of a nationwide collective action and court-authorized notice. In *Hipp v. Liberty National Life Insurance Co.*, 252 F.3d 1208 (11th Cir.2001), the Eleventh Circuit "suggest[ed]" a "two-tiered approach to certification of § 216(b) opt-in classes" to assist district courts in resolving the similarly situated inquiry. *Id.* at 1219.Under the first tier, which is labeled the "notice stage," the district court must decide, "usually based only on the pleadings and any affidavits which have been submitted [,] ... whether notice of the action should be given to potential class members."*Id.* at 1218 (*quoting Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir.1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84, (2003)). Before notice is given, a "district court should satisfy itself that there are other employees of the [defendant-] employer who desire to 'opt-in' and are 'similarly situated' ...." *Dybach v. State of Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567–68 (11th Cir.1991).

*Devries v. Morgan Stanley & Co.*, No. 12–81223–CIV, 2014 WL 505157, *2 (S.D.Fla. Feb. 7, 2014).

*Hilley v. Tacala, L.L.C.*, No. 2:12-CV-2691-SLB, 2014 WL 1246364, at *1-2 (N.D.. Ala. Mar. 24, 2014).

## II.    EVIDENCE

Applying the standards stated above, the court finds that the plaintiff has proposed a class of "all store managers and acting store managers." (Doc. 1 at 1; doc. 7 at 11). Although she is not clear, based on her argument, and the nature of the evidence presented, the court assumes that she means all such persons, "nationwide."[1]

### A.    <u>The Declaration of Virginia Prince</u>

In support of her petition for notice, she has submitted her own affidavit, which states:

> 2.    I worked as a Store Manager for Cato from October 2011 until May 2013 and from May 2014 to the present. I also worked as a Store Manager at the Anniston, Alabama store. I have also worked at the Oxford, Gadsden and Boaz, Alabama stores on a temporary basis.
>
> 3.    I worked as a Second Assistant Store Manager for Cato from September 20, 2009 until February of 2011, when I was promoted to Senior First Assistant. I stepped down from the First Assistant Manager position in the period between May of 2013 and May of 2014.
>
> 4.    As a Store Manager, I receive a fixed salary and I am not, nor have I ever been, paid overtime for hours worked in excess of forty in any week.
>
> 5.    My primary duties as a Store Manager consists of sales, receiving

---

[1] The failure to clearly describe the potential class is reason enough to deny the motion.

boxes off of trucks, unpacking boxes, censoring items, stocking and restocking the shelves and racks, cleaning the store, waiting on customers and running the cash register. I would estimate that I spend over 90% of my time performing these various manual labor job duties.

6.      The store in which I work as Store Manager received an average of 145 boxes of merchandise per week. Because of Cato's policies and the lack of sufficient hours for the hourly paid employees of the store, I routinely receive the merchandise trucks, unpacked the merchandise once it is in the store, and ready the merchandise for sale.

7.      The job duties/responsibilities associated with the position of Store Manager have remained consistent throughout my employment and are the same at all stores in which I have worked.

8.      The job duties/responsibilities associated with the position of Store Manager are essentially the same as those for the assistant manager positions. The main difference between these positions is that assistant managers receive overtime compensation if they work in excess of 40 hours in a week.

9.      I have talked with other Store Managers in regards to the amount of time they spend per week performing non-managerial/manual labor job duties such as stocking and re-stocking shelves and racks, running the cash register, waiting on customers, in person and on the telephone, cleaning the store, etc.

10.     Based upon my conversations with other Store Managers, these Store Managers also spend approximately 90% of their time performing non-managerial, manual labor job duties.

11.     Based on my experience, my personal observations and my conversations with other Store Managers for Cato, the job duties/responsibilities of other Store Managers for Cato are very similar to my job duties/responsibilities.

12.     All managerial decisions in regards to hiring, demoting, suspending, termination, setting pay, awarding pay raises, evaluating

employees performance, determining store merchandise, determining where store merchandise was placed in store, store hours, employees weekly hours, scheduling, leave of absences, store's payroll budget, overtime for hourly paid employees were made by upper management. I have little to no input into all of these store activities.

13.    It is my understanding there is only one store policy and procedure manual, which all stores were/are required to follow.

14.    It is my understanding that there was only one Store Manager job description that is applicable to all Store Managers. The job description states that the Store Manager is responsible for all activities and objectives of one store, including sales generation and effective customer service (30%), shrinkage (20%), HR management (15%), merchandising (15%), administrative and expense management (15%) and store maintenance (15%).[2]

15.    The Store Manager job description dictates that all Store Manager activities must be directed in strict compliance with all Cato Corporation policies, procedures, rules and regulations. Corporate policy 100.1

16.    The Sr. First Assistant Manager's job description states that the Sr. First Assistant Manager share responsibility with SM for all store activities and objectives of store including sales generation and effective customer service (30%), shrinkage (20%), HR management (15%), merchandising (15%), administrative and expense management (15%) and store maintenance (15%).[3]

17.    The First Assistant Manager job description states that he/she

---

[2] The percentages add up to 110%. The error comes from the fact that the declaration, which is referencing document 7-7 at 2, has incorrectly assigned the value of 15% to "store maintenance," when the correct value, according to document 7-7, is 5%. This error, and those described in the next few notes, appear in all of the declarations which were submitted.

[3] These percentages also add up to 110%. The referenced job description does not appear in the record, so, although it is likely that the same error occurred here as occurred with regards to the store manager duties, the court cannot say for sure.

shares responsibility for all activities and objectives of the store and that his/her primary responsibility is sales generation and effective customer service (30%), shrinkage (20%), HR management (15%), merchandising (20%), administrative and expense management (10%) and store maintenance (5%).[4]

18.    The Second Assistant Manager job description states that he/she shares responsibility with Store Manager and 1st Assistant Manager for all store activities and objectives of store and that his/her primary responsibility is including sales generation and effective customer service (40%), shrinkage (20%), HR management (10%), merchandising (15%), administrative and expense management (10%), and store maintenance (15%).[5]

19.    Cato's policies dictate where store merchandise is place[d] through the issuance of "plan-o-grams". The plan-o-grams dictate how the store should be laid out, where the merchandise should be displayed in the store, how clothes should be arranged and by what color, what merchandise should be displayed on mannequins, what shelves or rack items can be placed on. To the best of my knowledge, all stores receive plan-o-grams. Store Managers do not have the authority to vary from the plano-grams. As a Store Manager, I have no input into the plan-o-gram of the store. Corporate policy 200.6, I.A.

20.    Upper Management controlls [sic] and/or performs all important managerial job duties and/or decisions associated with the operation of the store.

21.    The District Manager and/or someone higher up in the Corporate chain of command has direct control over the store's payroll budget, hiring procedures, employee benefits, scheduling of employees, banking procedures, employee testing procedures, salary determinations,

---

[4] While these percentages add up to 100%, the document which is referenced does not appear in the record.

[5] These percentages add up to 110%. The document which is referenced does not appear in the record.

merchandise ordering procedures, merchandise selection, merchandise location, security, maintenance, overtime, and the store hours.

22.    The store's payroll budget is set by the Corporate Office and sent to the stores. As a Store Manager, I do not have any input into the setting of the store's payroll budget.

23.    The weekly work schedules for the store employees is based upon the store's payroll budget. The store's payroll budget directly controlls [sic] the number of hours store employees could work. As a Store Manager I had no input into the store's payroll budget.

24.    The Store where I hold the position of Store Manager is open seven days per week. The store's hours are determined by the Corporate office. I have no input into setting the store's hours.

25.    The Store Manager's job description states that I am required to work a minimum of 45 hours per week, but due to the lack of payroll I always work more hours than the required 45.

26.    The store's payroll budget controls both the number of employees employed in a store and the number of hours these employees can work each week.

27.    As a Store Manager I lack the discretion and independent authority to grant employees a leave of absence. This is based on corporate policy.

28.    As a Store Manager, I lack the discretion and independent authority to close the store in case of emergencies, such as a hurricane. This is based on corporate policy 200.4.

29.    As a Store Manager, I lack the discretion and independent authority to set an employee's pay or to award an employee a pay raise. This is based on corporate policy103.11.

30.    As a Store Manager, I lack the discretion and independent authority to interview, determine starting pay or hire any member of the stores management team. This is based on corporate policy 103.4.

31.    The Store's management team consists of the Store Manager, Senior First Assistant Manager, First Assistant Manager, and Second Assistant Store Manager.

32.    As a Store Manager, I lack the discretion and independent authority to place newspaper ads or website postings for job openings. This is based on corporate policy 103.2. Resumes pursuant to these ads are sent to the Regional Vice President

33.    As a Store Manager, I lack the discretion and independent authority to hire First Assistant Managers, Second Assistant Managers, Senior First Assistant Managers or sales associates. This is based on corporate policy 103.4 and 103.7.

34.    As a Store Manager, I lack the discretion and independent authority to terminate, suspend, or demote an employee. This is based on corporate policy 102.1, 103.13 and 103.9.

35.    As a Store Manager, I lack the discretion and independent authority to appraise hourly paid employees in order to determine appropriate increases. This is based on corporate policy 103.11.

36.    As a Store Manager, I am required to open and close the store a minimum of two days per week, per corporate policy 200.7. When I open the store I am required to arrive at the store 30 minutes prior to opening, per company policy 200.2.

37.    When I close the store, I am required, per company policy 200.2, to ensure outside lights are on, ensure isle racks are layered, vacuum entire store, clean front tile and mop, empty dressing rooms, clean mirrors, vacuum dressing room, clean desk and glass, empty trash, close out registers, do bank deposit, empty hanger bins.

38.    As a Store Manager, I lack the discretion and independent authority to exceed the pre-determined allotted hours or assign work in excess of 40 hours per week. This is based on corporate policy 200.7.

39.    As a Store Manager, I lack the discretion and independent

authority to schedule the days and hours employees will work. This is determined by corporate policy 200.7.

40.     As a Store Manager, I lack the discretion and independent authority to . . . arrange and determine what could be on the store manager's desk. This is based on corporate policy 200.8.

41.     As a Store Manager, I lack the discretion and independent authority to contract for routine maintenance or repairs needed in the store. This is based on corporate policy 200.14.

42.     Upper Management substantially limits my independent discretion and authority by dictating the daily activities that must be performed through a "SM Monthly Planner[.]" . . . As a Store Manager, I am required to strictly comply with the established deadline set forth in the planner.

43.     I receive weekly, if not daily, e-mails from Corporate Headquarters and my District Manager with specific details as to what the day's activities would consist of.

44.     As a Store Manager, I lack the discretion and independent authority regarding processing of merchandise. Corporate provides specific instructions as to processing shipment deliveries of merchandise. Per company policy, the District Manager determines which shipment processing options for apparel a store is to use.

45.     As a Store Manager, my primary job duty is selling, not management.

46.     My job duties as a Store Manager are no different than the Senior First Assistant Manager, First Assistant Manager, or the Second Assistant Manager.

47.     The Senior First Assistant Manager, First Assistant Manager, and the Second Assistant Manager are all hourly paid employees who were eligible for overtime compensation, if approved by the District Manager.

(Doc. 7-2 at 2-11).

### B.    <u>The Declaration of Tracy Ford</u>

In addition, the plaintiff has submitted the declaration of Tracy Ford, which is substantially identical to the plaintiff's declaration except that Ford states:

> . . .    I worked as a First Assistant for Cato from March 15, 2007 until approximately mid-June 2007, when I was promoted to acting Store Manager for 12 weeks, and then Store Manager.
>
> . . .    I worked as Store Manager until October 21, 2011. I worked as a Store Manager at the Muscle Shoals and Russellville, Alabama stores.
>
> . . .
>
> . . .    My primary duties as a Store Manager consisted of sales, unloading trucks, stocking and restocking the shelves and racks, cleaning the store, waiting on customers, and running the cash register. I would estimate that I spent over 90% or more of my time performing these various manual labor job duties.
>
> . . .    The Muscle Shoals store in which I worked as Store Manager received a truck containing, on average, 325 boxes of merchandise each week. The Russellville store in which I worked as Store Manager received a truck containing, on average, 150 boxes of merchandise each week. Because of Cato's policies and the lack of sufficient hours for the hourly paid employees of the store, I routinely unloaded the merchandise trucks, unpacked the merchandise once it was in the store, and readied the merchandise for sale.

(Doc. 7-1 at 2-3).

### C.    <u>The Declaration of Kimberly Terrell</u>

In addition, the plaintiff has submitted the declaration of Kimberly Terrell



which is substantially identical to the plaintiff's declaration except that Terrell states:

> . . .    I worked as a Store Manager for Cato from February 2010 until February 2013. I worked as a Store Manager at the Muscle Shoals and Florence, Alabama stores. I was a Store Manager the last year of my employment at the Florence Alabama location.

> . . .    I started as a Key Holder, went to Second Assistant Manager, then First Assistant Manager, and then Senior First Assistant Manager during the period of 2007 until February 2010.

> . . .

> . . .    My primary duties as a Store Manager consisted of sales, receiving merchandise off of trucks, unpacking merchandise, applying sensors, stocking and restocking the shelves and racks, cleaning the store, waiting on customers, and running the cash register. I would estimate that I spent 85% to 90% of my time performing these various manual labor job duties.

> . . .    The Muscle Shoals store in which I worked as Store Manager received, on average, 300 boxes of merchandise per week. The Florence store in which I worked as Store Manager received an average of 250 boxes of merchandise per week. Because of Cato's policies and the lack of sufficient hours for the hourly paid employees of the store, I routinely personally received the boxes, moved the boxes within the back room, unpacked the merchandise once it was in the store, and readied the merchandise for sale. My primary duties as a Store Manager consisted of sales, receiving boxes off of trucks, unpacking boxes, censoring items, stocking and restocking the shelves and racks, cleaning the store, waiting on customers and running the cash register. I would estimate that I spend over 90% of my time performing these various manual labor job duties.

(Doc. 7-3 at 2-3).

### D.    **The Declaration of Courtney Munford**

In addition, the plaintiff has submitted the declaration of Courtney Munford

which is substantially identical to the plaintiff's declaration except that Munford

states:

> . . .   I worked as a Second Assistant Manager for Cato at the Anniston
> Alabama store from April 2012 to May 2013, when I was promoted to
> Store Manager.
>
> . . .   I worked as Store Manager until May of 2014. I am currently on
> the schedule as a part time sales associate.
>
> . . .   I filled in as a Store Manager at the Oxford Alabama store in
> March of 2014.
>
> . . .   My primary duties as a Store Manager consisted of sales,
> unpacking merchandise, readying merchandise for sale, stocking and
> restocking the shelves and racks, cleaning the store, waiting on
> customers, and running the cash register. I would estimate that I spent
> over 90% to 95% of my time performing these various manual labor job
> duties.
>
> . . .   The Anniston store in which I worked as Store Manager received
> a truck containing, on average, 150 boxes of merchandise each week.
> The Oxford store in which I worked as Store Manager received a truck
> containing 183 boxes of merchandise. Because of Cato's policies and the
> lack of sufficient hours for the hourly paid employees of the store, I
> routinely unpacked the merchandise once it was in the store, and readied
> the merchandise for sale.

(Doc. 7-4 at 2-3).

### E.   **Documents**

The plaintiff also supports her motion with:

– an unauthenticated document which states on its face that it is "The CATO

Corporation   Store   Manager   Edition   Store   operations   Compensation

13

Handbook." (Doc. 7-5 at 2-15).

–A printout of a web page stating, among other things, that "[t]here are over 1,000 Cato stores in 32 states." (Doc. 7-6 at 2).

– an unauthenticated document which, on its face, states that it is the "Store Manager Job Description." (Doc. 7-7 at 2-3).

– an unauthenticated document which, on its face, states that it is the "Acting Store Manager Job Description." (Doc. 7-8 at 2-3).

– the opt-in consents of the declarants. (Doc. 3-1).

## F.  <u>The Declaration of Michael Phillips</u>

In opposition to the motion, the defendant offers the declaration of Michael Phillips, who is "a District Manager at the Cato Corporation." (Doc. 18-1 at 1). He states:

2.    Cato operates more than 1,000 retail stores in 32 states.

3.    Cato stores are organized into districts of approximately 10-12 stores each, which are overseen by one District Manager.

4.    Because District Managers oversee so many stores, we only visit each store only on an intermittent basis.

5.    The actual Cato stores are run by Store Managers who are responsible for the overall management of their store. See Attachment 1 – Cato Store Manager Job Description.

6.    Cato expects Store Managers to manage "all activities and objectives of one store," including: "sales generation, effective

14

customer service, shrinkage, Human Resources management, merchandising, administrative and expense management and store maintenance."

7.   Although Store Managers sell merchandise, they perform their duties as Store Manager while selling.

8.   While functioning within Cato's corporate culture, Store Managers work with a high degree of independence to operate their stores.

9.   Cato Store Managers are expected to delegate tasks so that they are able to manage their store.

10.  Store Managers are responsible for staffing that includes accepting and reviewing applications, interviewing applicants, and in some instances hiring sales associates.

11.  Additionally, Store Managers are responsible for creating employee schedules, assigning work, providing training and coaching, and handling discipline of employees.

12.  Store Managers have latitude in determining employees' work schedules.

13.  Store Managers also oversee how employees carry out their duties, administer discipline, and work to motivate their employees.

14.  Store Managers monitor employees' cash register use and daily interactions with customers.

15.  While Store Managers' primary duties may fall into specific categories important to managing the operation – such as staffing or supervising and directing or monitoring sales – the actual time spent performing these duties on a day-to-day basis varies from store to store.

16.     Store Managers manage stores of varying sales volume, and those Store Managers in higher volume stores manage additional staff, and are responsible for more merchandise than those who manage smaller volume stores.

17.     Acting Store Managers at Cato step in for Store Managers when they are on leave and the Acting Store Manager job assignment generally lasts for six to eight weeks.

18.     Cato maintains two separate job descriptions for Cato Store Managers and Acting Store Managers. See Attachments 1 and 2.

19.     We operate 68 Cato stores in Alabama.

(Doc. 18-1 at 1-3).

Attached to the declaration is the "Store Manager Job Description" referenced therein. (Doc. 18-1 at 7-8). It is identical to the unauthenticated version of the same document submitted by the plaintiff. (Doc. 7-7 at 2-3). Also attached to the affidavit is the "Acting Store Manager Job Description" referenced therein. (Doc. 18-1 at 10-11). It is identical to the unauthenticated version of the same document submitted by the plaintiff. (Doc. 7-8 at 2-3).

## III.   ANALYSIS

Despite the lenient standard applicable, the court cannot, at this time, conditionally certify a nationwide class. A substantial portion of the declarations submitted by the plaintiff rely on speculation and hearsay. For example, the declarants' conclusion that _other_ Store Managers also spend approximately 90% of

16

their time performing non-managerial, manual labor job duties, is based, at least in part, on the declarants' conversations with these other store managers. Even if these statements were not hearsay, the declarations fail to identify these managers, fail to specify how many other managers each declarant spoke to, and fail to mention in what state, or states, these managers work. Based on such evidence, the court cannot say that there are, in other states, managers who are similarly situated to the plaintiff.

Similarly, the declarants' "understanding" that there is only one store policy and procedure manual, and one Store Manager job description,[6] for all stores in the whole country does not support the motion. These vague statements fail to show how the declarants have personal knowledge of said fact. *See, Pickering v. Lorillard Tobacco Co.*, No. 2:10 CV 633 WKW, 2012 WL 314691, at *11 (M.D. Ala. Jan. 30, 2012) (Watkins, J.) ("[B]elief by itself carries no evidentiary weight.").Finally, the declarations all refer to written job descriptions, many times clearly incorrectly. This too is hearsay.

Even assuming that all of the statements contained in the declarations are admissible for the purpose of the instant motion, none of the declarations, or documentary evidence, supports the conditional certification of a nationwide class.

---

[6] The defendant's submission seems to confirm that there is one store manager job description for all stores.

Assuming that there is a nationwide standardized job description, that alone cannot be the basis for conditional certification. *Pickering*, 2012 WL 314691 at \*12 ("A standardized job description is insufficient to justify a nationwide collective action based upon a claim that the employer improperly classified a category of employees as exempt."). "Rather . . . [the court] must analyze the *nature* of each employee's job duties, and the degree to which evidence regarding the plaintiff's job duties can be applied to all other employees." *Id.*; *see also, Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1272 (M.D. Ala. 2004) ("The 'similarly situated' inquiry in this case must be analyzed in terms of the nature of the job duties performed by each putative plaintiff.").

At best, the declarations in the instant case only show that three persons, in only five stores[7] in the northern half of the state of Alabama, had an experience similar to the plaintiff's. There is evidence that Cato operates 68 Cato stores throughout Alabama. (Doc. 18-1 at 3). It has more than 1,000 stores throughout the country. (Doc. 7-6 at 2). The limited sample offered by the plaintiff is not enough to show that there are similarly situated employees throughout the country. *See, Pickering*, 2012 WL 314691, at \*11 ("Evidence consisting of declarations from two sales representatives

---

[7] The stores are: Muscle Shoals (Ford and Terrell), Russellville (Ford); Florence (Terrell), Anniston (Munford), and Oxford (Munford).

from the same region is insufficient to warrant nationwide collective action certification for sales representatives in all of Lorillard's 787 territories, 122 divisions, 20 regions, and 4 areas across the country.").

## IV. CONCLUSION

Based on the foregoing, the motion to conditionally certify and facilitate notice is **DENIED without prejudice.** The parties are ordered to immediately confer and provide the court with a Rule 26 report. The report should set out a bifurcated discovery plan which addresses first whether there are similarly situated employees to the plaintiff in other Cato stores in the country.  The report should be filed no later than March 20, 2015.

**DONE** and **ORDERED** this 10th day of March, 2015.

VIRGINIA EMERSON HOPKINS
United States District Judge

19