## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| VIRGINIA PRINCE, on behalf of herself and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) | Case No.: 1:14-CV-1708-VEH |
| | ) | |
| v. | ) | |
| | ) | |
| THE CATO CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

---

## MEMORANDUM OPINION AND ORDER

Plaintiff Virginia Prince has sued defendant The Cato Corporation alleging violations of the Fair Labor Standards Act's (FLSA), 29 U.S.C. §§ 201–19, wage-hour provisions. Prince moves the court to facilitate nationwide notice to a proposed class of similarly situated Cato employees under the FLSA's collective action mechanism, 29 U.S.C. § 216(b). Cato opposes notice in any form and, in the alternative, argues that, if notice is required at all, it should be limited to north Alabama. The motion will be **GRANTED** with the class limited to north Alabama.

### I-A.

Cato is a mid-range women's clothing store with more than 1,000 locations in 32 states. (Doc. 40, ¶ 1; doc. 40-1 at 20:3–4). Virginia Prince worked as a store manager (SM) for Cato in its Anniston, Alabama store from October 2011 until May 2013 and

from May 2014 until present. (Doc. 7-2, ¶ 2). She is, and always has been, paid a fixed salary and no overtime for this work. (*Id.*, ¶ 4). She is required to work a minimum of 45 hours per week and always works more. (*Id.*, ¶ 25). The overwhelming majority of Prince's time on the job is spent performing manual labor. (*Id.*, ¶ 5). The tasks she performs are the same as the tasks performed by assistant managers, who are hourly employees paid overtime for work in excess of 40 hours in a week. (*Id.*, ¶ 8). As store manager, Prince has "little to no" input into most activities bearing on store management, including pay, employee performance, scheduling, and payroll. (*Id.*, ¶ 12).

Prince filed this lawsuit on September 4, 2014, alleging that Cato has unlawfully withheld overtime wages from her by misclassifying her as exempt from the wage-hour laws. (*See* doc. 1). She purported to bring the suit on behalf of herself and all others similarly situated, *id.*, and moved on September 17, 2014 to facilitate the distribution of notice to potential co-plaintiffs. (Doc. 7). The court denied this motion without prejudice on March 10, 2015. (Doc. 18). On April 8, 2015, the court bifurcated discovery, with Phase I limited to the issue of class certification. (Doc. 30). Prince moved again on October 13, 2015 to facilitate notice. (Doc. 35). The motion has come under submission. (*See* docs. 40 & 44).

**I-B**.

Prince seeks to certify the following class:

> [A] nationwide class consisting of:
>
> > 1.     Current and former employees of Cato Fashions who served as a Store Manager or Acting Store Manager between September 17, 2011 and the present;
> > 2.     Who were paid on a salary basis; and,
> > 3.     Worked at least 40 hours in any one week while paid on a salary basis.

(Doc. 35 at 9).

**II-A. THE FLSA**

The FLSA prescribes a minimum wage, 29 U.S.C. § 206, and maximum hours, *id.* § 207, although "any employee employed in a bona fide executive, administrative, or professional capacity" is exempt from the wage-hour requirements. *Id.* § 213(a)(1). Up to 40 % of a retail executive or administrative employee's duties may be "not directly or closely related to the performance of executive or administrative activities" without forfeiting the exemption. *Id.* It is the employer's burden to show entitlement to an exemption. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995). A private citizen may enforce the FLSA either individually or through its collective action mechanism. 29 U.S.C. § 216(b).

### II-B. COLLECTIVE ACTIONS UNDER SECTION 216(B)

"An action to recover the liability prescribed [for violating section 206 and/or 207] . . . may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other <u>employees similarly situated</u>." *Id.* (emphasis added). Participants in a collective action must opt into the suit. *Id.* The Eleventh Circuit has recommended managing collective actions in two steps: a notification stage and a decertification stage. *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001). "After being given notice, putative class members have the opportunity to opt-in." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008). The notice should be limited to "employees similarly situated." *Id.*

The courts of appeals have avoided defining "similarly situated" with any real precision. *Id.* at 1260 n. 38 (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–16 (5th Cir. 1995) (noting the "remarkable" fact that many courts decline to define "similarly situated"), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)). The Eleventh Circuit has said that—at a minimum—before facilitating notice; *i.e.*, approving step one, a "district court should satisfy itself that there are other employees . . . who desire to 'opt-in' and who are 'similarly situated' with respect to their <u>job requirements</u> and with regard to their <u>pay provisions</u>." *Dybach v. State of Florida Department of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991) (emphasis added).

4

The job requirements and pay provisions need not be identical—just similar. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996). The required showing at the notice stage is "not particularly stringent," *Hipp*, 252 F.3d at 1214, and "less stringent than that for joinder under Rule 20(a) or for separate trials under Rule 42(b)." *Grayson*, 79 F.3d at 1097.

The Eleventh Circuit's *Morgan* decision, affirming the district judge, included the facts on which the district judge relied in proceeding past step one, and thus provides a useful benchmark for evaluating Prince's motion:

> The court found Family Dollar's store managers were similarly situated within the meaning of § 216(b) because they: (1) worked 60 to 80 hours a week; (2) received a fixed salary and no overtime pay; (3) spent 75 to 90% of their time on non-managerial tasks such as stocking shelves, running the cash registers, unloading trucks, and performing janitorial duties; (4) did not consistently supervise two or more employees; (5) lacked the authority to hire, discipline, or terminate employees without first obtaining permission from their district managers; (6) could not select outside vendors without their district managers' permission; (7) worked no less than 48 hours a week under the threat of pay cuts or loss of leave time; and (8) arrived at work before the store opened and stayed until after closing.

*Morgan*, 551 F.3d at 1243.

As a threshold matter, Prince suggests that *Morgan,* the most recent comprehensive discussion of collective action certification in the Eleventh Circuit, requires that notice issue when a class of employees have the same job description and

are subject to the same claimed exemption from the wage-hour laws. Prince does not provide a pinpoint cite for this proposition, opting instead for a pincushion cite: "*Morgan*, 551 F.3d at 1233, 1241, 1243, 1245–46, 1249, 1251–54, 1259–65 and [n.] 46." (Doc. 35 at 14). Prince's proposed rule is a dubious reading of *Morgan*, and although embracing her view would be an expeditious way to dispose of this motion, the court declines to do so. This motion can be resolved without creating a new, bright-line rule.

### III-A. DUTIES AND PAY

Prince argues that she has been wrongfully denied overtime pay in violation of section 207. In particular, she claims that Cato fails to pay her overtime because it has wrongfully misclassified her as an exempt worker. The classification is wrongful, she says, because her primary job duty is not management; it is sales generation and customer service. Additionally, she has little to no independence from direct supervision by a district manager. *Cf. id.* at 1248–58 (describing a similar relationship between Family Dollar's district and store managers).

Prince's testimony is presumably intended to be exemplary of Cato managers. She describes her typical duties as opening the store, doing bank deposits, assisting customers and helping them match clothes, receiving shipment, breaking down boxes, putting clothes on the floor, cleaning bathrooms, and dusting the store. (Doc. 39-7 at

117:13–118:3). Prince's work schedule, as well as that of her assistant managers, is set by Cato and, although she does fill in the blanks in the schedule, the available blanks rotate from week to week. (*Id.* at 88:22–91:1). She is also unable to request additional merchandise for the store, *id.* at 150:17–23, and she has no authority to deviate from the displays in the store. (*Id.* at 192:13–20).

It is Prince's position that the policy of misclassification is implemented nationwide, creating a class of "similarly situated" employees. She presents evidence of a common job description, doc. 39-2 at 4–5, that the store managers' subordination to district managers is the product of nationally implemented regulation of minutiae, doc. 35 at 14–17, and that the decision to classify the store managers as exempt was done wholesale; *i.e.*, there was not any individualized determination of classification.

Cato responds by saying that a common job description—which is applied nationwide without regard to variations in store size or geography, doc. 39-1 at 52:21–53:7—is not enough to establish that employees are similarly situated (true, *see Pickering v. Lorillard Tobacco Co.*, No. 2:10-CV-633-WKW, 2012 WL 314691, at *11 (M.D. Ala. Jan. 30, 2012)), that the job description Prince uses is read selectively, that the minutiae-regulating policies are not probative, and that a common policy of exemption is insufficient. The problem with Prince's objections is that its divide and conquer strategy—describing each fact as individually insufficient, and hence,

7

collectively insufficient—is contrary to the law. Because facts can (and often do) form a gestalt, the court must assess them in their totality. *See, e.g., Whineglass v. Smith*, No. 8-11-CV-2784-T-23TGW, 2012 WL 6163067, at *9 (M.D. Fla. Nov 12, 2012).

Cato objects to Prince's reading of the job description on two grounds. First, by emphasizing the function weights, which reflect a task's relative importance, doc. 39-1 at 53:23–54:8, assigned to each job task, Prince ignores the fact that the store manager is vested with "responsibil[ity] for all activities and objectives in one store." (Doc 39-2 at 4). Second, Cato says it is entirely unremarkable that a retail manager's most important duty is sales. All that is true, but the job description, when itemizing the function weights, provides that well over fifty-percent of the function weight assigned to the store manager's responsibilities are for duties that are not obviously management duties, like sales and loss prevention, which at least suggestive that the store manager is not, in fact, managing.

Additionally, Cato's 30(b)(6)[1] deponent, Vice President for Associate Relations,

---

[1] FED. R. CIV. P. 30(b)(6) provides that:

**(6) Notice or Subpoena Directed to an Organization.** In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

Risk Management, and Cato Overseas Human Resources, John Warsinsky, confirmed that sales generation and customer service are the most important tasks the store manager performs. (Doc. 39-1 at 54:22–55:2). So the job description is at least vague as to whether the store manager actively sells products and serves customers more than managing other employees doing so, and Prince's reading of the description is buttressed by her deposition, the affidavits she has provided from other store managers, and Cato's Vice-President. Further, the performance of managerial tasks alongside non-managerial tasks does not necessarily mean that the employee is a manager. *See Rodriguez v. Farm Grocery Stores, Inc.*, 518 F.3d 1259 (11th Cir. 2008). At this early stage, there is sufficient evidence buttressing Prince's reading of the job description to rely on it, at least in part, in concluding that notice should issue.

Prince summarizes the minutiae-regulating policies as showing that the store managers uniformly lack authority to hire, fire, and manage personnel, doc. 35 at 9–10; that district managers and/or the corporate offices uniformly control store operations *id.* at 10–11; that store managers uniformly lack control over budget and payroll, *id.* at 11; they uniformly lack control over employee hours, work schedules, and payrolls, *id.* at 12; they uniformly lack control over merchandising, marketing, and Plan-O-Grams, *id.*; and they uniformly lack control over store maintenance and vendors. *Id.* In support of each of these contentions, Prince cites divers Cato policies, depositions, and affidavits.

Cato does not appear to dispute the veracity of Prince's underlying evidence, except to the extent Cato disputes Prince's and the opt-in plaintiffs' typicality (a discussion reserved for section IV-A, *infra*). Rather, Cato appears to argue that, first, the treatment of these policies as probative of similar situation lacks a limiting principle; "any company seeking to implement uniform policies across all operations will necessarily have created a situation where all persons employed in a given capacity are similarly situated." (Doc. 40 at 15). Cato's second apparent argument on the point is that these "randomly selected" policies do not suggest that the store managers are similarly situated in their "day-to-day duties." (*Id.* at 14–15). The first argument was implicitly rejected by the Eleventh Circuit when that court explicitly relied on comparable policies in affirming a finding of similar situation. *Morgan*, 551 F.3d at 1248–51 (describing the extent to which corporate policies regulated the lilliputian details of a store manager's duties). As to the second argument, if Prince has cherry-picked these policies, Cato has introduced no evidence of it.

### III-B. OTHER EMPLOYEE INTEREST

Prince has presented affidavits from two other former Cato store managers in North Alabama. (*See* docs. 39-8 and 39-9). One is from Tracy Ford, who worked as a store manager from June 2007 to October 21, 2011 in Muscle Schoals and Russellville, Alabama. (Doc. 39-8, ¶¶ 2–3). The other is from Kimberly Terrell, who worked as a

store manager from February 2010 to February 2013 in Muscle Shoals and Florence, Alabama. (Doc. 39-9, ¶ 2).The affidavits describe their experience working as store managers and reflect that they regularly worked in excess of forty-five hours per week (docs. 39-8, ¶ 25; 39-9, ¶ 25), that they received a fixed salary and were not paid overtime (docs. 39-8, ¶ 4; 39-9 ¶ 4), that approximately 90% of their time at work was spent performing manual labor (docs. 39-8, ¶ 5; 39-9, ¶ 5), and that the job duties for store manager are essentially the same as for assistant manager, except assistant managers receive overtime. (Docs. 39-8, ¶ 8; 39-9, ¶ 9).

The district manager or someone higher in the corporation "had direct control over the stores['] payroll budget, hiring procedures, employee benefits, scheduling of employees, banking procedures, employee testing procedures, salary determinations, merchandise ordering procedures, merchandise selection, merchandise location, security, maintenance, overtime, and the store hours," docs. 39-8, ¶ 21; 39-9, ¶ 21, and the store managers had little to no input in these activities. (Docs. 39-8, ¶ 12; 39-9, ¶ 12).

The foregoing reveals that there are individuals aside from Prince who desire to opt-in and are similarly situated with regard to their job duties and pay provisions, satisfying *Dybach's* absolute minimum. *See* 942 F.2d at 1567–68. Furthermore, a number of the facts deemed sufficient in *Morgan* are also present here: (1) they work

more than forty hours per week; (2) the managers receive a fixed salary and no overtime pay; (3) they spend 75 to 90% of their time on non-managerial tasks such as stocking shelves, running the cash registers, unloading trucks, and performing janitorial duties; (4) they lack the authority to discipline or terminate employees without first obtaining permission from their district managers; and (5) they cannot select outside vendors without their district managers' permission. Thus, Prince has made a sufficient showing to facilitate notice. However, no one has opted in from outside of north Alabama—*Morgan* featured opt-ins from several states prior to conditional certification, 551 F.3d at 1242—and no acting store managers have opted in, so the court will not include acting store managers, nor managers outside of north Alabama, within the conditionally certified class. *Cf. Guerra v. Big Johnson Concrete Pumping, Inc.*, No. 05-14237-CIV, 2006 WL 2290512, at *4 (S.D. Fla. May 17, 2006) (indication of interest from opt-in plaintiffs raises lead plaintiff's contention beyond "pure speculation").

## IV-A. CATO'S AFFIDAVITS AND NON-TYPICALITY

Cato presents affidavits from other store managers and marshals them in support of its contention that Prince, Ford, and Terrell are atypical of Cato managers. As Prince points out, weighing the credibility of dueling affidavits is better reserved for step two, when the plaintiffs' burden is heavier. *See Anderson*, 488 F.3d at 953 (the burden is

12

heavier at step 2); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001) (Step one "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."); *Pendlebury v. Starbucks Coffee Co.*, No. 04-CV-80521, 2005 WL 84500, at *3 (M.D. Fla. Jan. 3, 2005) (reserving credibility determinations, unless overwhelming, for step two). The same goes for Cato's concurrent duty, 29 C.F.R. § 541.106, argument.

Cato attacks the affidavits from Ford and Terrell on the ground that they contain hearsay and speculation based on conversations with other Store Managers, *see, e.g.*, doc 39-8 ¶¶ 9–11, although Cato cites no authority for the proposition that conditional certification must be decided on the basis of admissible evidence. To the extent Cato's hearsay objection is an objection directed to the <u>reliability</u> of the declaration, the point is taken, and the court does not rely on the hearsay portions of the affidavits. Additionally, Cato suggests that the affidavits are "cookie-cutter" and self-serving, which (aside from being dubiously probative of the affidavits' truthfulness) are credibility arguments more appropriately considered in step two.

### IV-B. CATO'S ATTACK ON THE LIMITATIONS PERIOD

A final matter: the class period will differ depending on whether Cato's alleged violations of the FLSA are willful; three years if so, and two years if not. 29 U.S.C. § 255(a). Prince, in her initial brief, argued that willfulness is a jury question, so notice

should issue for a three year period. Cato, in its response, argued that because it constantly assesses exempt status, it cannot be found to be willful. Prince is correct; the notice will go back three years.

## V.

Accordingly, it is **ORDERED** that:

> A class within the Northern District of Alabama, as defined in 28 U.S.C. § 81(a), consisting of any person who satisfies the following criteria:
>
> 1.  Current and former employees of Cato Fashions who served as a Store Manager between September 17, 2011 and the present;
> 2.  Who were paid on a salary basis; and,
> 3.  Worked at least 40 hours in any one week while paid on a salary basis
>
> is hereby conditionally certified.

The parties are further **ORDERED**, at the decertification stage, to comply with Appendix II (governing summary judgment) of the court's uniform initial order in presenting their arguments. (*See* doc. 4 at 14–21). The court must emphasize that citations to depositions or affidavits in the supporting briefing for step two must contain pinpoint cites.

14

**DONE** and **ORDERED** this 25th day of May, 2016.

**VIRGINIA EMERSON HOPKINS**
United States District Judge