# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| VIRGINA PRINCE, *et al.*, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case Number:  1:14-CV-01708-VEH |
| ) | |
| THE CATO CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF
## MOTION TO DECERTIFY THE
## CONDITIONALLY CERTIFIED COLLECTIVE ACTION

Defendant The Cato Corporation ("Cato" or "Defendant") has moved the Court to decertify this conditionally certified Fair Labor Standards Act ("FLSA") collective action. Defendant relies in support on the following Memorandum in Support of Motion to Decertify the Conditionally Certified Collective Action.

## TABLE OF CONTENTS

I.  BACKGROUND AND PROCEDURAL STATUS ............................................3

II. ARGUMENT ...........................................................................................................4

    A.    Disparate Factual Settings of Plaintiffs Warrant Decertification ............4

    B.    Cato's Defenses are Highly Individualized ............................................14

    C.    Fairness and Procedural Considerations Make Certification Improper..16

III. CONCLUSION ......................................................................................................17

# **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Cagle's*, 488 F.3d 945 (11th Cir. 2007)..........................................4, 10

*Brooks v. BellSouth Telecomm., Inc.*, 164 F.R.D. 561 (N.D. Ala. 1995), *aff'd mem.*, 114 F.3d 1202 (11th Cir.1997)...............................................................................5

*Costello v. Kohl's Illinois, Inc.,* 2014 U.S. Dist. LEXIS 124376 ............................13

*Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989)......................................16

*Indergit v. Rite-Aid Corp.*, 293 F.R.D. 632 (S.D.N.Y. 2013)..................................16

*Knott v. Dollar Tree Stores, Inc.*, 897 F. Supp. 2d 1230 (N.D. Ala. 2012) ........................................................................................... 5, 11, 13, 14, 16

*Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008) .. 4, 5, 10, 14

*Pickering v. Lorillard Tobacco Co.*, 2012 U.S. Dist. LEXIS 10421 (M.D. Ala. Jan. 30, 2012)................................................................................................................5

*Richter v. Dolgencorp, Inc.*, 2012 U.S. Dist. LEXIS 1512 (N.D. Ala. October 22, 2012)................................................................................................................12

**Statutes**

29 § U.S.C. 213(a) (1)..............................................................................................14

29 U.S.C. § 255(a) ..................................................................................................14

**Regulations**

29 C.F.R. § 541.100 ..................................................................................................6

29 C.F.R. § 541.106(a)............................................................................................10

29 C.F.R. § 541.700 ..................................................................................................6

## I. BACKGROUND AND PROCEDURAL STATUS

For this case to proceed as a collective action, plaintiffs must prove — not merely plead or make a colorable argument, but actually *prove* by a preponderance of the evidence — that all of the members of the plaintiff group are "similarly situated" with respect to the tasks they performed as Cato Store Managers. There is no such proof and Cato urges this Court to decertify this action.

Cato operates retail stores each run by one Store Manager. These stores come in many different sizes and configurations with varying numbers of employees, store operating hours and sales volumes. Due to the practical differences in Cato's unique retail environment, the work activities of each exempt Store Manager vary from person to person and store to store.

One former Store Manager, Virginia Prince, filed this lawsuit against Cato claiming that she was improperly classified as exempt and seeking overtime compensation under the FLSA. By order dated May 25, 2016, the Court conditionally certified this case as a collective action under Section 216(b) of the FLSA. Since the onset of this litigation, 24 individuals have opted into the case. The parties have engaged in discovery, including five depositions from the plaintiff group and a corporate representative deposition of Cato, as well as exchanging extensive written discovery.

Cato now moves for decertification because the depositions and other evidence show that the plaintiffs are not sufficiently similarly situated to proceed to trial as a collective group. *See Anderson v. Cagle's*, 488 F.3d 945, 952 (11th Cir. 2007) ("[t]o maintain a collective action under the FLSA, plaintiffs must demonstrate that they are 'similarly situated'"). At the current stage triggered by Cato's motion for decertification, the Eleventh Circuit instructs district courts to use their discretion to consider several factors in determining whether plaintiffs are similarly situated, including: (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant that appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008). Given the wide variety of individual issues raised by plaintiffs' claims and the individualized nature of the defenses, fairness and procedural considerations dictate that this case should not proceed as a collective action under § 216(b).

## II. ARGUMENT

**A.    Disparate Factual Settings of Plaintiffs Warrant Decertification**

   *1.    The Burden Of Proof Lies With Plaintiffs, Not Defendant*

Although this is Cato's Motion, the burden to establish that the group of plaintiffs is "similarly situated" lies with plaintiffs. *See Anderson*, 488 F.3d at 952. It is a burden of proof, not production: plaintiffs must prove they are all "similarly

situated" to each other with respect to all the legally relevant exemption criteria. *See Brooks v. BellSouth Telecomm., Inc.*, 164 F.R.D. 561, 567-69 (N.D. Ala. 1995), *aff'd mem.*, 114 F.3d 1202 (11th Cir.1997). This represents a drastic change from the lenient standard governing initial conditional certification. Mere allegations no longer suffice; instead, plaintiffs face a stricter and more onerous burden to show members of the collective are in fact similarly situated. *See Knott v. Dollar Tree Stores, Inc.*, 897 F. Supp. 2d 1230, 1234 (N.D. Ala. 2012) (noting plaintiffs' heavier burden at this stage). At this point, the court determines whether the plaintiffs are in fact similarly situated to those who have opted in. As one court described it, the second stage "is where the rubber meets the road." *Pickering v. Lorillard Tobacco Co.*, 2012 U.S. Dist. LEXIS 10421 at 20* (M.D. Ala. Jan. 30, 2012). If plaintiffs have not *proven* sufficient homogeneity, the Court must decertify and allow plaintiffs' claims to proceed individually. *See Morgan*, 551 F.3d at 1261.

2. *To Be Similarly Situated, Plaintiffs Must Prove They Are Materially the Same*

Context, individual circumstances, and shades of degree all matter in applying the FLSA executive exemption at issue in this case. In fact, "[a]pplying the executive exemption is 'an inherently fact-based inquiry' that depends on the many details of the particular job duties and actual work performed by the employee seeking overtime pay." *Morgan*, 551 F.3d at 1263 (quotations omitted). That is why DOL's binding regulation commands that "[d]etermination of whether an employee

5

has management as [her] primary duty *must be based on all the facts in* [*that*] *particular case.*" 29 C.F.R. § 541.700(a) (emphasis added).

The bona fide executive exemption applies if the employee (1) is paid a salary of at least $455 per week; (2) has as her "primary duty" the management of the enterprise in which the employee is employed; (3) customarily and regularly directs the work of two or more other employees; and (4) has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. *See* 29 C.F.R. § 541.100.  There is no dispute as to the first and third factors in this case and the only areas of potential dispute relate to the "primary duty" of management and whether the plaintiffs' recommendations were given particular weight.  Plaintiffs have testified to exercising vastly different amounts of discretion in their duties – differences that are critically important in both exemption and decertification analysis.

The evidence demonstrates significant and material variations in the plaintiffs' circumstances as highlighted below:

- Plaintiffs include 5 current Store Managers and 20 past managers working in 17 different cities for 8 different District Managers.  *See* Ex. A, Declaration of John Warsinsky, ¶ 3.

- Plaintiffs' stores varied in number of employees per store, sales volume and physical layout/square footage. *See* Ex. A, ¶ 3.

- Plaintiffs' annual salaries range from $25,000 to $35,400, with differing bonuses awarded to each plaintiff. *See* Ex. A, ¶ 3; Ex. B, Deposition of Christy Hawkins, p. 10 ll. 18-23.

- Plaintiffs claim to work vastly different number of hours from less than 45 hours a week to over 60 each week. *Compare* Ex. B, p. 10 ll. 18-23; Ex. C, Deposition of Nelda Jolly, p. 54 ll. 1-5; Ex. D, Deposition of Jessica Randles, Depo. p. 93 ll. 9-16; and Ex. F, LaShawnta Barfield's Discovery Responses.

- Some plaintiffs testified that they pre-screened and interviewed applicants on their own, while others claimed they could only interview with a District Manager present. *Compare* Ex. B p. 24 ll. 9-15, p. 25 ll. 3-12 to Ex. D p. 38 ll. 8-18, p. 39 ll. 1-3.

- Some plaintiffs conceded their recommendations regarding an employee's status were consistently followed or approved by their District Managers while others claimed that they did not make such recommendations and waited for the District Mangers' lead. *Compare* Ex. B p. 17 ll. 13-19, p. 19 ll. 7-17, p. 22 ll. 14-23, p. 36 l. 22 – p. 37 l. 3, p. 87 l. 20 – p. 88 l. 6 to Ex. E, Deposition of Helen Joyce Allen, p.

7

40 ll. 2-7 and Ex. G, Deposition of Virginia Prince, p. 54 ll. 3-9, p. 110 l. 3 – p. 111 l. 18, p. 137 ll. 3-21.

- Some Store Managers conceded they are ultimately responsible for their store while one Store Manager claimed she was no more than a glorified cashier. *Compare* Ex. B p. 25 l. 13 – p. 26 l. 7, p. 58 ll. 15-21 to Ex. D p. 61 l. 14 - p. 62 l. 5.

- One Store Manager rarely had her District Manager change the schedule she prepared for her store, while others had more frequent changes. *Compare* Ex. D p. 33 ll. 5-17; Ex. E p. 55 ll. 13-22 and Ex. B p. 47 ll. 2-7 to Ex. C p. 51 ll. 13-19.

- One plaintiff drafted disciplines for her employees whereas others only disciplined at the District Manager's suggestion or direction. *Compare* Ex. C p. 49 l. 23 – p. 50 l. 8 with Ex. D p. 49 ll. 9-14; Ex. B p. 26 ll. 11-16.

- Plaintiffs had diverse experiences regarding evaluating, with one explaining she completed her own performance appraisals, while another claiming that this was the responsibility of the District Manager or even an Assistant Manager. *Compare* Ex. C p. 45 ll. 5-19 to Ex. D p. 40 ll. 17-22.

- All plaintiffs conceded they were responsible for training, but varied on the types of employees they trained. *Compare* Ex. C p. 43 ll. 19-21 to Ex. D p. 45 l. 22 – p. 46 l. 4 and Ex. B p. 38 ll. 10-20 and Ex. E, p. 79 ll. 18-22.

- Some Store Managers handled customer complaints on their own, while others said they only did so through their District Manager. *Compare* Ex. C p. 86 ll. 6-14 to Ex. D p. 63 ll. 14-19 and Ex. E p. 109 ll. 4-16.

- Some plaintiffs testified they had discretion with merchandizing in the store while others claimed they had no such discretion. *Compare* Ex. C p. 82 ll. 1-4 to Ex. B p. 70 ll. 4-12.

- Some plaintiffs claimed to be able to make meaningful recommendations regarding pay raises while others claimed to have no discretion to do so. *Compare* Ex. D p. 42 ll. 21-23 to Ex. C p. 102 l. 14 – p. 104 l. 7.

- Some Store Managers testified they could spend charity money and donations on their own, while others claimed this would require a District Manager's approval. *Compare* Ex. C p. 123 l. 16 p. 124 l. 17 to Ex. D p. 47 l. 18-p. 48 l. 5 and Ex. B p. 63 ll. 2-23 and Ex. E p. 95 ll. 11-23.

Given that plaintiffs describe widely dissimilar levels of managerial authority and duties, they are not similarly situated and this matter should be decertified.

The Eleventh Circuit's decision in *Morgan* does not dictate a different result. In *Morgan*, "there was scant evidence" that the employees' duties varied and all of the employees "perform[ed] uniform, cookie-cutter tasks" making the collective action model efficient to resolve the common question of whether the tasks uniformly performed by the class members qualify for the exemption. *Id.* at 1263-1264. In sharp contrast to *Morgan,* there is substantial evidence of wide variations among Store Managers rendering the collective action model unworkable. *See Anderson*, 488 F.3d at 953 (where significant, "material distinctions" in job duties performed by class members exist, the collective action model cannot work). As a result, the finder of fact simply could not reach a uniform decision with regard to all members of the collective based on the testimony, mandating decertification.

### 3. *Concurrent Performance of Management Duties*

The Department of Labor ("DOL") recognizes that especially in a retail environment, managers routinely perform management and non-management tasks simultaneously. *See* 29 C.F.R. § 541.106(a). The question, according to DOL, is whether the plaintiff "generally remains responsible for the success or failure of business operations under [her] management *while* [she is] performing nonexempt work." *See id.* The exemption is not lost if a retail manager spends time performing

10

non-management tasks such as selling and stocking, provided she often does so while also supervising employees or doing other management tasks. In this case, the plaintiffs testified to concurrent management and manual tasks, such as training and merchandising, while also performing customer service. *See e.g.* Ex. B p. 56 l. 12 – p. 57 l. 22. If some plaintiffs in this case offer evidence countering the testimony of others that they engaged in concurrent duties most of the time, that merely shows differences among the plaintiffs that require decertification.

    4. *District Managers' Supervision*

Courts routinely consider the degree to which employees are subject to direct observation and supervision when applying the executive exemption. *See Knott*, 897 F. Supp. 2d at 1239. In this case, some of the plaintiffs worked for hands-on, micromanaging District Managers while others reported to District Managers who did not micromanage them at all. *Compare* Ex. B p. 47 l. 21 – p. 48 l. 2; p. 49 ll. 5-11 to Ex. C, p. 39 ll. 16-19 and Ex. G, p. 180 l. 18 – p. 181 l. 7. The variations in the discretion allowed from one District Manager to another necessitates individualized, and not representative, testimony.

Another factor particular to this case is the fact that several plaintiffs appear to have conflicts of interest and/or were directly involved in the employment of other plaintiffs. For example, plaintiff Virginia Prince testified of her intent to discipline and possibly fire opt-in plaintiff Whitney Whitten-Parker, while opt-in plaintiff

11

Christy Hawkins recommended the promotion of fellow opt-in plaintiff Tara Bennett. *See* Ex. G, p. 101 l. 8 – p. 105 l. 10; Ex. B p. 87 ll. 3-22. Similarly, at first opt-in Nelda Jolly recommended that another opt-in Jessica Randles leave the company but later changed her mind and recommended Randles be promoted after Randles began taking her job more seriously. *See* Ex. C pp. 76 l. 1 – 77 l. 15.

Along with these potential conflicts and inter-relatedness among the plaintiffs, the various experiences of the plaintiff group demonstrate their lack of similarity. A Store Manager with over ten years of experience with Cato is clearly not similarly situated to a brand new Store Manager. Likewise, a Store Manager who is frequently disciplined for poor performance or fired for theft is not similarly situated to a Store Manager who receives outstanding reviews and bonuses for superior performance. All of these inquiries must be made individually, plaintiff by plaintiff, before Cato's potential liability to any one plaintiff can be determined, further weighing against certification. *See e.g., Richter v. Dolgencorp, Inc.*, 2012 U.S. Dist. LEXIS 1512, at **20-26 (N.D. Ala. October 22, 2012) (granting decertification motion in collective action of retail store managers involving the executive exemption)

> 5. *Common Job Description and Exempt Status Do Not Erase Individualized Assessment Requirement*

Any suggestion by plaintiffs that common job descriptions and exempt statuses render collective treatment appropriate misses the mark. The law requires the Court to assess plaintiffs' actual day-to-day work experiences – what plaintiffs

actually do – in order to determine whether they are similarly situated. Here, there is no reasonable argument that named and opt-in plaintiffs are similarly situated because their own testimony demonstrates significant disparity regarding the level of discretion exercised while working at Cato.

A common job description and classification decision are not sufficient to maintain a collective action under the FLSA, particularly where clear differences relevant to a dispositive exemption defense exist. Indeed, numerous courts have noted that a uniform job description or an employer's decision to classify a particular group of employees as exempt does not eliminate the need to make individualized, factual determinations regarding what members of the proposed collective actually do. *See e.g. Costello v. Kohl's Illinois, Inc.,* 2014 U.S. Dist. LEXIS 124376, at *4 (S.D.N.Y. 2014) (noting "if a uniform job description was sufficient, every business in corporate America would be subject to automatic certification of a nationwide collective action on the basis of the personal experiences of a single misclassified employee"); *Knott,* 897 F. Supp. 2d at 1239-1240 (explaining how mere classification of a group does not automatically qualify plaintiffs as similarly situated).

The evidence and testimony in this case demonstrate that Cato Store Managers' exercise of discretion varied widely. Accordingly, a fact finder could not

come to one conclusion with respect to the exempt status and the collective action is due to be decertified.

**B.     Cato's Defenses are Highly Individualized**

In determining whether plaintiffs satisfied their more stringent, second-stage burden, the Court must consider whether the defenses available to Cato are individual to each plaintiff. *See Morgan*, 551 F.3d at 1263. Here, all key aspects of Cato's defenses turn on Store Manager-by-Store Manager fact-finding not susceptible to group adjudication.

Cato maintains that the Store Managers were properly classified as exempt employees and intends to assert the executive exemption to defend against each plaintiff's claims. *See* 29 § U.S.C. 213(a) (1) (exempting executive employees from the FLSA's overtime pay requirements). The relevant statutory exemption will require an individual, fact-specific analysis of each Store Manager's job activities and responsibilities. As discussed above, the activities and responsibilities vary depending on each plaintiff's individual circumstances at each store, making this case unsuitable for collective treatment. *See e.g., Knott,* 897 F. Supp. 2d at 1237, 1241 (difference in the type and amount of work plaintiff managers performed and assessment of executive exemption called for decertification).

Likewise, the statute of limitations is specific to each opt-in. Plaintiffs seek three years of overtime pay. Under 29 U.S.C. § 255(a), the statute of limitations

period is two years unless a plaintiff can establish a willful violation that would warrant three years. All of these inquiries must be made individually, plaintiff by plaintiff, before Cato's potential liability to any one plaintiff can be determined.

Plaintiffs seek overtime compensation for all hours worked (during the applicable limitations periods) by each Store Manager in excess of 40 hours per week. Determining the actual number of hours worked each week by each person requires an individualized inquiry. Any weeks during which the particular plaintiff did not work would be excluded from the overtime period. For example, opt-in plaintiff Nelda Jolly took a five-week leave of absence, and named plaintiff Virginia Prince was on an extended seven-month leave of absence during her employment. *See* Ex. C p. 100 ll. 3-14; Ex. G p. 70 ll. 13-15). Vacation weeks would also be excluded, and the amount of weeks taken varies from person to person. The number of hours worked by each person fluctuates during certain times such as inventory, holiday or peak season. One opt-in plaintiff claimed to work twenty-plus hours more each week than other opt-in plaintiffs. *See* Ex. F, LaShawnta Barfield discovery responses, compared to Ex. B p. 10 ll. 17-23. All of these factors point to the varying individualized defenses Cato will have in this matter that render collective action inappropriate.

## C.     Fairness and Procedural Considerations Make Certification Improper

Fairness and procedural considerations also weigh heavily in favor of decertification. The Supreme Court recognizes that a primary objective of a collective action is to *enhance* judicial efficiency by resolving common issues of law and fact arising from the same unlawful conduct. *See Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989). That objective cannot be achieved where, as here, parties must litigate multiple individualized issues. More importantly, any efficiency gained by permitting plaintiffs to proceed collectively "cannot be obtained at the expense of [Cato's] due process rights." *Knott*, 897 F. Supp. 2d at 1241.

Discovery has revealed a broad spectrum of testimony from the plaintiffs about their employment conditions and work habits. The deposed plaintiffs' testimony displays a wide disparity with respect to plaintiffs' authority to hire, fire, evaluate, discipline, and schedule subordinates, as well as the number of employees each supervised. No two plaintiffs are alike and as such, no single plaintiff can represent another. A collective action does not make sense where the management functions of each employee must be examined case by case. Failing to decertify the conditionally-certified class will unfairly and prejudicially require defendant to prepare for and present 25 different trials simultaneously. *See Knott*, 897 F. Supp. 2d at 1241; *see also Indergit v. Rite-Aid Corp.*, 293 F.R.D. 632, 650 (S.D.N.Y. 2013) ("Where there appears to be substantial different employment experiences among

the various opt-ins the procedural advantages of a collective action cannot be realized.").

In contrast, decertifying the class would not unduly disadvantage plaintiffs or opt-in plaintiffs. Each would retain the right to pursue claims individually and recover attorneys' fees. And, to the extent any plaintiffs or opt-ins have credible claims, they would likely benefit from having their claims tried separately from those class members with non-meritorious claims. No particular plaintiff can identify any prejudice by decertification.

### III. CONCLUSION

In summary, the claims of all 25 plaintiffs in this case are highly individualized and require individualized proof. Plaintiffs have no expert testimony to hold their individualized theories together and no other means of offering valid representative proof such that the Court could determine liability as to every member of the class. The only way that plaintiffs can try this case is for all 25 plaintiffs to take the stand and testify about each of their alleged activities. Because that would defeat the point of a collective action, the class should be decertified. Accordingly, for the reasons discussed above, defendant respectfully requests that this Court decertify the collective action in this case.

Respectfully submitted this 16th day of March, 2018.

    *s/ Shannon L. Miller*
Thomas A. Davis (ASB-5877-S56T)
davist@jacksonlewis.com
Phone:  205-332-3101
Tammy L. Baker (ASB- 9522-B62T)
bakert@jacksonlewis.com
Phone:  205-332-3106
Shannon L. Miller (ASB- 8026-R60S)
millers@jacksonlewis.com
Phone:  205-332-3102
**JACKSON LEWIS P.C.**
800 Shades Creek Parkway, Ste. 870
Birmingham, Alabama 35209
Facsimile:  205-332-3131

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the 16th day of March, 2018, a true and correct copy of the foregoing has been served via the Court's CM/ECF filing system upon the following counsel of record:

Robert J. Camp, Esq.
Gregory O. Wiggins, Esq.
Rocco Calamusa, Esq.
Kevin W. Jent, Esq.
WIGGINS, CHILDS, PANTAZIS,
FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, AL  35203

    *s/ Shannon L. Miller*
Counsel of Record

4842-5431-5615, v. 1