FILED

2018 May-04  PM 03:09
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| VIRGINA PRINCE, *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number:   1:14-CV-01708-VEH |
| | ) | |
| THE CATO CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DECERTIFY THE CONDITIONALLY CERTIFIED COLLECTIVE ACTION

Defendant The Cato Corporation ("Cato") submits the following Reply in Support of its Motion to Decertify the Conditionally Certified Collective Action [DOC. 64].

## INTRODUCTION

Plaintiffs' brief in opposition to Cato's decertification motion fails to rebut the evidence showing that the responsibilities performed by the opt-in plaintiffs vary too widely to permit the use of representative testimony to try their claims of misclassification.  In an effort to avoid decertification, plaintiffs focus only on generic, lawful similarities that do not influence the opt-in plaintiffs' exempt status without addressing the varying differences that do influence their exempt status.  That all opt-ins were employed as exempt Cato Store Managers is insignificant.  What is significant is the number of differences in the opt-ins' day-to-day job duties and performance of

managerial duties.  Because the plaintiffs' factual disparities cannot support a similarly situated finding and because collective treatment would undermine the FLSA's objectives, this case should be decertified.

A.    *Morgan* **Does Not Mandate Result in this Case**

Contrary to plaintiffs' assertion, *Morgan* is not the end-all case and does not mandate the result in this case.  In *Morgan*, the Eleventh Circuit determined whether the district court abused its discretion in denying decertification in light of the district court's factual findings and assessments regarding the weight of the evidence—not whether the Eleventh Circuit would reach the same conclusion had it conducted its own independent assessment of the merits of collective treatment. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260, 1263 n.44 (11th Cir. 2008).  Importantly, the Eleventh Circuit's decision does not preclude this Court from making its own factual findings, based upon its assessment of the quality of each party's evidence, and exercising its discretion to conclude that decertification is appropriate.  Indeed, as one district court has noted "it does not necessarily follow that a contrary ruling [in *Morgan*] would have been an abuse of the district court's discretion."   *Knott v. Dollar Tree Stores, Inc.*, 897 F. Supp. 2d 1230, 1240 (N.D. Ala. 2012)

Notably, the Eleventh Circuit's decision in *Morgan* was decided before the United States Supreme Court's decision from just last month, which clarified that exemptions to the overtime requirement are to be given a "fair reading," meaning

they are not to be construed too narrowly.  *Encino Motorcars, LLC v. Navarro,* 138 S. Ct. 1134, 1142 (2018).

In addition to being decided before this important clarification in *Encino*, the Eleventh Circuit reviewed *Morgan after* the jury verdict.  Here, the Court's task is to determine whether plaintiffs have presented sufficient evidence that this case should be tried collectively *before* trial.

Unlike *Morgan*, all three of the second-stage certification factors favor decertification in this case.  First, this case lacks volumes of evidence showing substantial similarities among all opt-in plaintiffs.  Second, given the unique facts of this case, Cato's exemption defense is too individualized to permit collective treatment. Third, trying this case collectively would be inherently unfair and procedurally impractical – not only for Cato, but also for individual opt-in plaintiffs whose unique employment circumstances arguably could dictate different answers as to whether the exemption applies.  As such, *Morgan* does not dictate any particular result in the instant case.

## B.    Plaintiffs Fail to Rebut Evidence that Job Duties Differ

Plaintiffs fail to rebut Cato's showing that the plaintiffs' duties vary widely, and that many plaintiffs perform managerial and non-managerial tasks concurrently. In *Morgan*, the district court concluded that the exemption defense could be litigated collectively because, according to the court, the "overwhelming evidence show[ed] that the plaintiffs, as a group, shared a number of factual details with respect to their job

3

duties and day-to-day work." *Morgan*, 551 F.3d at 1262-1263. Such an "overwhelming" volume of evidence simply does not exist in this case.

Throughout their response brief, plaintiffs try and minimize the differences in the Store Managers' duties. Nowhere in plaintiffs' opposition do plaintiffs actually rebut the overwhelming differences that the plaintiffs testified to and that defendant highlighted in its principal brief. Because the opt-in plaintiffs' authority ranged from total to none, and everything in between, they simply cannot rebut the fact that they are not similarly situated for purposes of continued collective action. In their opposition, plaintiffs submit cookie cutter nearly identical declarations that do not appear to be based on actual personal knowledge and are written in such a manner that their truthfulness is questionable. This Court has appropriate previously questioned these type of statements. *See* this Court's Memorandum Opinion, p. 13 entered May 25, 2016 [Doc. 47].

Plaintiffs attempt to distance themselves from some of the telling testimony that fully demonstrates their varied and differing duties. For example, plaintiffs claim that the discretion to handle customer complaints is irrelevant to the inquiry of the executive exemption. *See* Pl. Brief, p. 34 n.9. In actuality, the management tasks listed in *Morgan* were never meant to be exhaustive and handling these complaints is a telling indicator of the discretion that a Store Manager exhibited. For those opt-in plaintiffs who claim to have no authority to engage with a customer

4

about a complaint involving a return, damaged merchandise, or about a Cato associate, this evidence would be beneficial to the analysis of their exemption. The comparison between a Store Manager who takes control of a customer complaint and handles it without seeking guidance varies wildly to a Store Manager who claims they are unable to even communicate with the customer about their concerns. *Compare* Ex. C p. 86 ll. 6-14 to Ex. D p. 63 ll. 14-19 and Ex. E p. 109 ll. 4-16.

In yet another effort to unsuccessfully distinguish the opt-ins, the plaintiffs attempt to characterize telling variations in degrees of responsibilities as differences without distinctions. For example, plaintiffs claim that having a District Manager present during an interview and a Store Manager interviewing an applicant on their own are the equivalent. *See* Pl. Brief, p. 24. However, the difference between having the discretion to interview without another manager present is very different than having to wait on your direct supervisor before even asking an applicant a single question.

Rather than rebut this undisputed testimony, plaintiffs attempt to shift the focus to the fact that Cato had all Store Managers classified as exempt. However, mere classification does not automatically qualify plaintiffs as similarly situated. See *e.g. Knott,* 897 F. Supp. 2d at 1239-1240 (explaining same). Plaintiffs also list out a sampling of various policies from Cato's procedure manual; however, this does

nothing to erase the fact that the plaintiffs themselves conceded their differences. Plaintiffs are likewise dismissive of the importance of the concurrent duties analysis.

Perhaps most notably, plaintiffs completely fail to rebut the inherent conflict apparent amongst the opt-in plaintiffs themselves. For example, plaintiff Virginia Prince testified of her intent to discipline and possibly fire opt-in plaintiff Whitney Whitten-Parker. *See* Ex. G, p. 101 l. 8 – p. 105 l. 10. Similarly, at first opt-in Nelda Jolly recommended that another opt-in Jessica Randles leave the company but later changed her mind and recommended Randles be promoted after Randles began taking her job more seriously. *See* Ex. C pp. 76 l. 1 – 77 l. 15. Opt-in plaintiffs with such divergent intentions in relation to the employment status of each other surely should not be lumped into the same trial. Given the plaintiffs' failure to rebut the evidence demonstrating their job differences, this matter is simply not appropriate for continued certification.

## C.      Highly Individualized Defenses Dictate Decertification

In the instant case, all key aspects of Cato's defenses turn on Store Manager-by-Store Manager fact-finding not susceptible to group adjudication. The relevant statutory exemption will require an individual, fact-specific analysis of each Store Manager's job activities and responsibilities. As discussed above and in its principal brief, the activities and responsibilities vary depending on each plaintiff's individual circumstances at each store, making this case unsuitable for collective treatment.

*See e.g., Knott,* 897 F. Supp. 2d at 1237, 1241 (difference in the type and amount of work plaintiff managers performed and assessment of executive exemption called for decertification). Nothing in plaintiffs' opposition refutes that fact Cato's varying individualized defenses render collective action inappropriate.

## D.     Certification Improper Given Fairness Considerations

Given each opt-in plaintiff's individualized experience as a Cato Store Manager, Cato must be given an opportunity to present individualized testimony regarding each of the "primary duty" factors. The differences in opt-in plaintiffs' employment experiences necessitate that each individual be called to testify about their experience, causing "the procedural advantages of a collective action to evaporate." *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 588 (E.D. La. 2008).

Certainly, it would not be possible for a Store Manager who conceded that they were ultimately responsible for their store to testify for another Store Manager who claimed she was no more than a glorified cashier. *Compare* Ex. B p. 25 l. 13 – p. 26 l. 7, p. 58 ll. 15-21 to Ex. D p. 61 l. 14 - p. 62 l. 5. Likewise, it would not be possible for a Store Manager who conceded their recommendations regarding an employee's status were consistently followed or approved by their District Managers to testify for another Store Manager who claimed that they did not make such recommendations and waited for the District Mangers' lead. *Compare* Ex. B p. 17 ll. 13-19, p. 19 ll. 7-17, p. 22 ll. 14-23, p. 36 l. 22 – p. 37 l. 3, p. 87 l. 20 – p. 88 l. 6

to Ex. E, p. 40 ll. 2-7 and Ex. G, p. 54 ll. 3-9, p. 110 l. 3 – p. 111 l. 18, p. 137 ll. 3-21.   Moreover, plaintiffs have no expert testimony to hold their individualized theories together and no other means of offering valid representative proof such that the Court could determine liability as to every member of the class.

While plaintiffs may achieve some reduction in their burden in proceeding as a collective, this does not outweigh the fundamental unfairness of requiring Cato to defend 25 separate trials simultaneously.   This is particularly true in this case where an extensively fact-based inquiry is required and the documented differences directly impact the assessment of the executive-exemption for *each* individual opt-in plaintiff.   Any efficiency gained by permitting plaintiffs to proceed collectively "cannot be obtained at the expense of [Cato's] due process rights."   *Knott*, 897 F. Supp. 2d at 1241.

## CONCLUSION

For the reasons discussed above and those included in defendant's principal brief in support of its motion to decertify, Cato respectfully requests that this Court grant its Motion to Decertify the Conditionally Certified Collective Action.

8

Respectfully submitted this 4th day of May, 2018.

*s/ Shannon L. Miller*
Thomas A. Davis (ASB-5877-S56T)
davist@jacksonlewis.com
Phone:  205-332-3101
Tammy L. Baker (ASB- 9522-B62T)
bakert@jacksonlewis.com
Phone:  205-332-3106
Shannon L. Miller (ASB- 8026-R60S)
millers@jacksonlewis.com
Phone:  205-332-3102
**JACKSON LEWIS P.C.**
800 Shades Creek Parkway, Ste. 870
Birmingham, Alabama 35209
Facsimile:  205-332-3131

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 4th day of May, 2018, a true and correct copy of the foregoing has been served via the Court's CM/ECF filing system upon the following counsel of record:

Robert J. Camp, Esq.
Gregory O. Wiggins, Esq.
Rocco Calamusa, Esq.
Kevin W. Jent, Esq.
WIGGINS, CHILDS, PANTAZIS,
FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, AL  35203

*s/ Shannon L. Miller*
Counsel of Record

4817-9945-5845, v. 1

9