FILED
2018 Jun-19  AM 10:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **VIRGINIA PRINCE, on behalf of herself and all others similarly situated,** ) ) ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No.: 1:14-CV-1708-VEH** |
| ) | |
| **THE CATO CORPORATION,** ) | |
| ) | |
| **Defendant.** ) | |

---

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION AND PROCEDURAL HISTORY

Before the Court is Defendant Cato Corporation's (hereinafter "Cato") Motion To Decertify the Conditionally Certified Collective Action (the "Motion"). (Doc. 64). Plaintiff Virginia Prince filed this action for herself and other similarly situated persons alleging violations of the Fair Labor Standards Act ("FLSA"). (Doc. 1). The Court conditionally certified a class. (Doc. 47). Following discovery, Cato filed the present motion. (Doc. 64). Both parties have briefed the Motion and it is ripe for review. For the reasons stated herein, the Motion is **DENIED**.

### II.    STANDARD

The Court of Appeals for the Eleventh Circuit has endorsed a two-step

approach to determining whether to certify a collective action under Section 216(b):

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision-usually based only on the pleadings and affidavits which have been submitted-whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class.   If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in."   The action proceeds as a representative action throughout discovery.

*Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001) (quoting

*Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995)).[1] "Because the

court has minimal evidence [during the first stage], this determination is made using

a fairly lenient standard, and typically results in 'conditional certification' of a

representative class." *Hipp*, 252 F.3d at 1218.

> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants

---

[1] In *Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562 (11th Cir. 1991), the Eleventh Circuit set out a two-part test for determining whether a collective action under the FLSA should be conditionally certified.  The two judicial inquiries for the court to make are:  (i) whether there are other employees of the employer who wish to "opt-in;" and (ii) whether these employees are "similarly situated" with respect to both there job duties and their pay.  *Dybach*, 942 F.2d at 1567-68; *see also Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1247-49 (11th Cir. 2003) (detailing differences between collective actions under FLSA and class actions under Rule 23).

are similarly situated, the district court allows the representative action to proceed to trial.  If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice.  The class representatives-i.e. the original plaintiffs-proceed to trial on their individual claims.

*Hipp*, 252 F.3d at 1218.[2]

Plaintiffs bear the burden of demonstrating a "reasonable basis" for their contention that collective action status is appropriate.  *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996) (citing *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983)).  Also, "[t]he decision to create an opt-in class under § 216(b), like the decision on class certification under Rule 23, remains soundly within the discretion of the district court."  *Hipp*, 252 F.3d at 1219.

The Supreme Court has identified the main benefits of a collective action under § 216(b):

A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity.

*Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170, 110 S. Ct. 482, 486, 107 L.

---

[2]  Although *Hipp* involved a collective action brought under the Age Discrimination in Employment Act of 1967, the Eleventh Circuit has made clear that the analysis in that case applies with equal force to FLSA collective actions. *Cameron-Grant* , 347 F.3d at 1243 n.2 (11th Cir. 2003).

Ed. 2d 480 (1989). Separate from determining the similarly situated issue, other district courts have "balance[d] these putative benefits against any prejudice to the defendant and any judicial inefficiencies that may result from allowing plaintiffs to proceed collectively." *Bayles v. American Medical Response of Colorado, Inc.*, 950 F. Supp. 1053, 1067 (D. Colo. 1996); *see id.* ("Further, regardless of the potential benefits, plaintiffs still must meet their burden of showing that they are similarly situated.").

The Eleventh Circuit further explained in *Morgan*:

> The second stage is triggered by an employer's motion for decertification. *Anderson*, 488 F.3d at 953. At this point, the district court has a much thicker record than it had at the notice stage, and can therefore make a more informed factual determination of similarity. *Id.* This second stage is less lenient, and the plaintiff bears a heavier burden. *Id.* (citing *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir.2001)).

> In *Anderson*, we again refused to draw bright lines in defining similarly, but explained that as more legally significant differences appear amongst the opt-ins, the less likely it is that the group of employees is similarly situated. *Id.* ("Exactly how much less lenient we need not specify, though logically the more material distinctions revealed by the evidence, the more likely the district court is to decertify the collective action."). We also refused to "specify how plaintiffs' burden of demonstrating that a collective action is warranted differs at the second stage." *Id.* Rather, we emphasized the fact that the "ultimate decision rests largely within the district court's discretion," and clarified that in order to overcome the defendant's evidence, a plaintiff must rely on more than just "allegations and affidavits." *Id.* Because the second stage usually occurs just before the end of discovery, or at its close, the

district court likely has a more extensive and detailed factual record.

In *Anderson*, we also quoted approvingly of *Thiessen*, where the Tenth Circuit identified a number of factors that courts should consider at the second stage, such as: "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant[s] [that] appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations[.]" *Anderson*, 488 F.3d at 953 (quoting with approval *Thiessen*, 267 F.3d at 1103); *see also Mooney*, 54 F.3d at 1213 n. 7, 1215–16. Thus, at the second stage, "although the FLSA does not require potential class members to hold identical positions, the similarities necessary to maintain a collective action under § 216(b) must extend beyond the mere facts of job duties and pay provisions" and encompass the defenses to some extent. *Anderson*, 488 F.3d at 953 (citation and quotation marks omitted). For example, the district court must consider whether the defenses that apply to the opt-in plaintiffs' claims are similar to one another or whether they vary significantly. *Id.* at 954 n. 8 (noting that all named plaintiffs were unionized but some opt-in plaintiffs were not, making the collective bargaining agreement defense applicable to some but not all plaintiffs). But ultimately, whether a collective action is appropriate depends largely on the factual question of whether the plaintiff employees are similarly situated to one another.

*Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261-62 (11th Cir. 2008).

Additionally, the Eleventh Circuit reviews under the abuse of discretion and clear error standards:

Further, we review a district court's § 216(b) certification for abuse of discretion. *Hipp*, 252 F.3d at 1217; *Grayson*, 79 F.3d at 1097. Judicial discretion in making a § 216(b) certification decision is, of course, not unbridled. Indeed, " '[a] district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous.' " *Anderson*, 488 F.3d at 953–54 (quoting *Chicago Tribune*

*Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1309 (11th Cir.2001)). The district court first must apply the proper legal standards for authorizing a § 216(b) collective action and for determining what similarly situated means. A court's determination that the evidence shows a particular group of opt-in plaintiffs are similarly situated is a finding of fact. *Anderson*, 488 F.3d at 954 (affirming decision to decertify based on conclusion "that the district court's view of the evidence is reasonable, and its findings, therefore, are not clearly erroneous"); *Hipp*, 252 F.3d at 1208 (noting that decertification decision is one where the court "makes a factual determination on the similarly situated question"). We will reverse the district court's fact-finding that Plaintiffs are similarly situated only if it is clearly erroneous—not simply because we might have made a different call. *Anderson*, 488 F.3d at 953–54 (citing *McMahan v. Toto*, 256 F.3d 1120, 1128 (11th Cir.2001)).

*Id.* at 1260.

## III.   ANALYSIS

Cato has three main arguments why the Court should decertify the collective action. (*See* Doc. 65 at 1). First, Cato argues that "disparate factual settings of plaintiffs warrant decertification." (*See id.* at 1, 4-14) (capitalization omitted). Second, Cato argues that its "defenses are highly individualized." (*See id.* at 1, 14-16) (capitalization omitted). Third, Cato argues that "fairness and procedural considerations make certification improper." (*See id.* at 1, 16-17) (capitalization omitted). The Plaintiffs respond that they are similarly situated and can meet their

burden to get past the decertification stage. (*See generally* Doc. 71).[3]

### A.   The Plaintiffs Are Similarly Situated

The Court first addresses Cato's argument that the facts of this case support decertification. (*See* Doc. 65 at 4-14). At this stage, "[t]he 'similarly situated' standard . . . is less 'lenient' than at the first, as is the plaintiffs' burden in meeting the standard." *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952 (11th Cir. 2007) (citing *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir.2001)). "[A]lthough the FLSA does not require potential class members to hold identical positions . . . the similarities necessary to maintain a collective action under § 216(b) must extend 'beyond the mere facts of job duties and pay provisions.'" *Id.* (citing another source). The Court has a great deal of discretion in this determination. *See id.*

Cato invokes the executive exemption and notes that it is fact driven. (*See* Doc. 65 at 5) (citing *Morgan*, 551 F.3d at 1263). "[T]he executive exemption, provides

---

[3] According to *Morgan*, a prima facie case entails evidence that:

 (1) [The Defendant] employed them; (2) [the Defendant] is an enterprise engaged in interstate commerce covered by the FLSA; (3) each Plaintiff actually worked in excess of a 40–hour workweek; and (4) [the Defendant] did not pay any overtime wages to them.

*See Morgan*, 551 F.3d at 1277, n.68. Cato's Vice-President's declaration provides evidence for the first element. (*See* Doc. 66-1 at 1 ¶3). Cato's answer admits the second element. (*See* Doc. 17 at 3 ¶11). Cato admits that its policy required at least 45 hours a week of work, and there is evidence the Plaintiffs exceeded 40 hours of work in some weeks. (*See* Doc. 69-11 at 8 ¶25); (Doc. 69-14). Cato admits it did not pay overtime. (*See* Doc. 69-11 at 3 ¶6).

that the FLSA's requirements 'shall not apply with respect to ... any employee employed in a bona fide executive ... capacity.'" *Morgan*, 551 F.3d at 1265 (citing 29 U.S.C. § 213(a)(1)). "To establish an employee is a bona fide executive, an employer must show: (1) the employee is '[c]ompensated on a salary basis at a rate of not less than $455 per week'; (2) the employee's 'primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof'; (3) the employee 'customarily and regularly directs the work of two or more other employees'; and (4) the employee 'has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.'" *Id.* at 1266 (citing 29 C.F.R. §541.100(a)) (footnote omitted).[4]

---

[4] The Code of Federal Regulations discusses what "particular weight" means:

> To determine whether an employee's suggestions and recommendations are given "particular weight," factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon. Generally, an executive's suggestions and recommendations must pertain to employees whom the executive customarily and regularly directs. It does not include an occasional suggestion with regard to the change in status of a co-worker. An employee's suggestions and recommendations may still be deemed to have "particular weight" even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status.

In support of its contention, Cato cites to portions of the record, as does Prince in response. (*See* Doc. 65 at 6-9); (Doc. 71 at 10-14). After reviewing the record, the Court finds that the Plaintiffs are similarly situated.[5]

As Prince argues, and Cato agrees, <u>every</u> member of the class is, or was, a store manager for Cato. (*See* Doc. 70 at ¶1); (Doc. 65); *see Morgan*, 551 F.3d at 1262 ("(1) their universal classification as store managers with the same job duties"). Additionally, <u>every</u> store manager was salaried. (Doc. 70 at 2); (Doc. 69-11 at 3 ¶5); *see also Morgan*, 551 F.3d at 1262 ("(8) their receiving base salaries regardless of the hours worked and no overtime pay"). Further, the Court finds that Cato designated <u>all</u> of their store managers as exempt executive since 2010. (*See* Doc. 69-11 at 3); *see Morgan*, 551 F.3d at 1264 ("In addition, Plaintiffs' evidence established that [defendant] uniformly exempted all store managers from overtime pay requirements, and its exemption decision did not turn on any individualized factors. Not one."); *id.* at 1263 (noting that the defendant "exempted all store managers from overtime pay requirements"). Cato admits that <u>none</u> of their store managers were paid for overtime,

---

29 C.F.R. §541.105.

[5] The Court will discuss what it finds to be the most important facts. The Court considered all facts submitted by the parties, and they were taken into account when making these findings. However, the Court has not endeavored to address every minutia of the Cato business, instead showing how there are more than enough facts to survive a motion to decertify.

9

even though <u>all</u> were required to work at least 45 hours a week. (*See* Doc. 69-11 at

3, 8). Cato's current Vice President for Associate Relations, Risk Management, and

Cato Overseas Human Resources testified that he was not aware of any Cato study

to determine if the store managers were correctly classified. (*See* Warsinky Depo. at

14-15).[6] In fact, it appears that the primary job responsibility of a store manager was

"sales generation/customer service" and the number two responsibility was "loss

prevention." (*See id*. at 54-55).[7] There is just <u>one</u> job description for <u>all</u> store

managers. (*See id.* at 52-53); *see Morgan*, 551 F.3d at 1264 ("There is nothing unfair

about litigating a single corporate decision in a single collective action, especially

where there is robust evidence that store managers perform uniform, cookie-cutter

_____

[6] Deposition page numbers refer to the actual deposition pages, not the CM/ECF
numbering.

[7]  The Code of Federal Regulations discusses "management":

Generally, "management" includes, but is not limited to, activities such as
interviewing, selecting, and training of employees; setting and adjusting their rates
of pay and hours of work; directing the work of employees; maintaining
production or sales records for use in supervision or control; appraising
employees' productivity and efficiency for the purpose of recommending
promotions or other changes in status; handling employee complaints and
grievances; disciplining employees; planning the work; determining the
techniques to be used; apportioning the work among the employees; determining
the type of materials, supplies, machinery, equipment or tools to be used or
merchandise to be bought, stocked and sold; controlling the flow and distribution
of materials or merchandise and supplies; providing for the safety and security of
the employees or the property; planning and controlling the budget; and
monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.

tasks mandated by a one-size-fits-all corporate manual."). As Cato's representative admits, its policy manual applies to <u>every</u> store manager "regardless of the size of the store, location of the store, the sales of the store, [or] any other variable." (*See* Warsinky Depo. at 48-50). According to Cato, every store manager worked on "visuals," and every store manager trained new employees. (*See* Warsinky Depo. at 84-86); *Morgan*, 551 F.3d at 1263 ("(12) their power to train subordinates"). Clearly Cato itself does not see great distinctions among its store managers if it has a uniform corporate policy that applies to every store manager. *See Morgan*, 551 F.3d at 1263.

The Court notes that, according to the Cato Store Operations Compensation Handbook, a Full-time Sr. 1st Assistant Manager is an hourly employee. (Doc. 69-4 at 2). According to Cato company policy, this position "shares responsibility with the Store Manager for all activities of one store." (Doc. 69-2 at 5); (*see also* Warsinky Depo. at 93-99); *see Morgan*, 551 F.3d at 1263 ("(9) their sharing certain managerial duties with hourly employees").

The Court also finds that Cato has policies in place that take much decision making away from store managers. (*See* Doc. 70 at 5) (citing to the record). Most of the real executive decisions are actually made by the district managers. (*See id.* at 9-14) (citing to the record); *see also Morgan*, 551 F.3d at 1262 ("(4) the restrictions on their power to manage stores as compared to the district manager's sweeping

11

managerial discretion"). According to company policy, the district managers exercise great control over store managers, down to ensuring that the top left drawer of the store manager's desk contains completed forms. (*See e.g.*, Doc. 69-3 at 16, 22); (*see also id.* at 28) (requiring store managers to get district manager approval before arranging for the store windows to be cleaned more than once a month); *Morgan*, 551 F.3d at 1262 ("(5) the amount of close district manager supervision of store managers"). Store managers have no role in determining the prices that goods are sold at. (*See* Warsinky Depo. at 21). Store managers do not determine what is sold at the store, and they do not even order more goods to be sold. (*See* Warsinky Depo. at 20); *cf. Morgan*, 551 F.3d at 1263 ("(14) their inability to select outside vendors without district manager approval"). Store managers cannot give pay raises without district manager approval. (Warsinky Depo. at 61); *see also Morgan*, 551 F.3d 1233 ("(11) their inability to authorize pay raises").

The Court finds that Cato has very detailed corporate policies that restrict store manager discretion, even down to areas such as the genre of music played in a store and the exact thermostat settings. (*See generally* Docs. 69-2, 69-3); (Doc. 69-3 at 30) (designating that only Top 40 music will be played); (*see also id.* at 24) (instructing the thermostat to be set at "72 Degrees Cool & 68 Degrees Heat"); (*id.* at 22) (diagram of how a store manager's desk should be organized); *see Morgan*, 551 F.3d

at 1262-63 ("(6) the lack of managerial discretion that Family Dollar corporate policies afforded to store managers"). In fact, there is evidence showing that the store managers have unclear, if not restricted, discretion to close their stores in emergencies. (*Cf.* Warsinky Depo. at 76-79); *see also Morgan*, 551 F.3d 1233 ("(13) their restricted authority to close stores in the event of emergencies").

There is evidence that "administrative and expense management" and "human resources" combined only total 30% of a store manager's job responsibilities. (*See* Doc. 69-2 at 3) (capitalization omitted); *see Morgan*, 551 F.3d at 1263 ("(7) their day-to-day responsibilities"); *id.* at 1262 ("(2) the small fraction of time they spent on managerial duties"); *id.* ("(3) the large amount of time they spent on non-managerial duties such as stocking shelves, running the cash registers, unloading trucks, and performing janitorial work"); (*see also e.g.*, Aaron Decl. at ¶4) ("I would estimate that I spend over 90% of my time performing these various manual labor/non managerial duties."); (*see* Prince Depo. at 192) (discussing how 90% of her time was spent); (*see* Hawkins Depo. at 53-55) (estimating that one to two hours a day is spent managing the store); (*see* Jolly Depo. at 96-98) (estimating that 65-70% of her day spent on the case register); (*see* Randles Depo. at 57-59) (noting the times she runs the cash register and works on sales). Over half of the responsibilities of a store manager are in "sales generation/customer service," "loss prevention," and "store

13

maintenance." (Doc. 69-2 at 3) (capitalization omitted).The store manager will sometimes do the same tasks as hourly employees. (*See* Warkinsky Depo. at 42-43).

The Court in *Morgan* noted that district courts do not need to track all fourteen job factors to get past a motion to decertify. *See Morgan*, 551 F.3d 1263 n.44. However, the lion's share of the factors here are strikingly similar.[8] These facts are enough for Prince to meet her burden to avoid decertification.

Cato argues certain facts in support of its position, but the Court is not persuaded that any compel decertification here.[9] This is especially true given the Court's detailed findings above. It is important to remember that the Plaintiffs do not have to be identical. *See Morgan*, 551 F.3d at 1259-60 (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)). Cato argues that there are "wide variations among Store Managers." (*See* Doc. 65 at 10). However, the facts cited by Cato, on their face, do not support such a broad assertion. (*See id.* at 6-9); (Doc. 74

---

[8] The Court understands Cato's argument that *Morgan* does not compel the result here because of the standard of review employed by the Eleventh Circuit in that case. (*See* Doc. 74 at 2-3). However, the Court is persuaded by *Morgan*, a binding Eleventh Circuit case. The Court here made its own independent factual findings. And, after making those findings, "the decertification decision [here] is not close." *See Morgan*, 551 F.3d at 1264 n.45.

[9] Cato notes that one Plaintiff testified that she was "ultimately responsible" for the store. (*See* Doc. 65 at 8) (citing to the record). However, that same Plaintiff also admitted she could ask an employee to clean up a mess, the subordinate could decline, and then she would actually have to ask the district manager for permission just to write that subordinate up. (*See* Hawkins Depo. at 60-63). That does not sound like an employee with ultimate responsibility.

at 3-6).[10]

For example, Cato argues that one Plaintiff "drafted disciplines for her employees" compared to "others [who only] disciplined at the District Manager's suggestion or direction." (Doc. 65 at 8). However, even in Cato's citation of the more independent store manager reflects that she still called her district manager who agreed to the discipline. (*See* Jolly Depo. at 49-50). The parties also argue over whether the Plaintiffs' experiences with hiring, firing, and interviewing candidates is enough variance to decertify the class. (*See* Doc. 65 at 6-7); (Doc. 71 at 27-30).[11] However, as the Plaintiffs note, and the Cato Field Policy and Procedure supports, Plaintiffs were given some responsibility for interviewing candidates. (*See* Doc. 71 at 31); (Doc. 69-2 at 32). The Court noted above how the same corporate policies applied to all Plaintiffs. While Cato's corporate representative agreed that "a store manager has the authority on her own to hire a [sales associate]," the corporate policy

---

[10] Cato states that at least one store manager testified she is "unable to even communicate with the customer about their concerns." (*See* Doc. 74 at 5) (citing to the record). The Court sat down and checked some of Cato's record citations. Upon review, they do not support Cato's broad contention, especially when read in context.

[11] The Court reviewed Cato's citations regarding how often recommendations were followed by district managers. (*See* Doc. 65 at 7-8). First, Ms. Allen's cited testimony seems to support the idea that recommendations were followed, not detract from it as the "compare" cite would suggest. (*See id.* at 7-8) (citing Ex. E, Deposition of Helen Joyce Allen, p. 40 ll. 2-7). Second, Ms. Prince's cited testimony seems to merely indicate that her district manager was more hands on and that she made recommendations based on what her district manager would want. This is not enough to convince the Court that the Plaintiffs have not carried their burden to show that they are similarly situated.

reflects that store managers must get district manager approval first. (Warsinsky Depo. at 61); (*see* Doc. 69-2 at 22-23).

Cato argues that just because some store managers concurrently performed management and non-management duties does not mean that they were no longer exempt employees. (*See* Doc. 65 at 10-11). However, the Court agrees that evidence in this case shows that the store manager had little authority over the store– the district manager really ran the show. (*See* Doc. 71 at 26-27) (citing *Morgan*, 551 F.3d at 1246, 1270-71); *see* 20 C.F.R. § 541.106 (discussing concurrent duties). The Code of Federal Regulations gives the example that "an employee whose primary duty is to work as an electrician is not an exempt executive even if the employee also directs the work of other employees on the job site, orders parts and materials for the job, and handles requests from the prime contractor." 20 C.F.R. § 541.06(c). After reviewing the evidence, it appears that a store manager's primary duty was sales, had some leeway to supervise employees (other than the restricted ability to discipline), could not order new products (unlike the electrician in the Code), and worked under the supervision of a district manager. Accordingly, Cato's concurrent argument fails.

Cato argues that some Plaintiffs worked for district managers who micro-managed more than others. (*See* Doc. 65 at 11-12) (citing *Richter v. Dolgencorp, Inc.*, No. 7:06-cv-1537-LSC, 2012 WL 5289511 (N.D. Ala. Oct. 22, 2012)). The Court

reviewed Cato's proffered facts. (*See* Doc. 65 at 11). They simply are not strong enough to persuade the Court that the Plaintiffs are not similarly situated in the face of the abundant evidence going the other way.[12] The FLSA does not require completely identical plaintiffs. *Cf. Morgan*, 551 F.3d at 1260.

Cato also argues that "several plaintiffs appear to have conflicts of interest and/or were directly involved in the employment of other plaintiffs." (Doc. 65 at 11-12); (*see also* Doc. 74 at 6). However, Cato cites no legal authority to develop why this argument compels a different result. Accordingly, it is waived.[13]

Cato points out that, in *Morgan*, the Eleventh Circuit reviewed the district court after trial, while the trial here has not occurred. (*See* Doc. 74 at 3). This argument has

---

[12] For example, just because one district manager permitted store managers to make balloons, and the other did not, is not enough to decertify this class. (*See* Prince Depo. at 180-82). Either way, it just shows that the district managers had power even over balloon making. (*See id.*). Additionally, the Court is not persuaded that just because one district manager gave Prince more hours to train than others is significant enough to decertify a class. (*See id.* at 180-82). Either way, Prince's testimony indicates that the district manager had enough control to be able to dictate her hours regarding training. (*See id.*). Prince's testimony also indicated that a new district manager meant that she had to conform to new preferences. (*See id.* at 184-85). Having to conform to the preferences of a new boss does not show a great deal of discretion; it shows that store managers had to adjust to the true decision maker's new priorities. (*See id.* at 185).

Additionally, four lines in one deposition where a Plaintiff concluded that one district manager was more hands-on than another is simply not enough to decertify in the face of all the other evidence. (*See* Jolly Depo. at 39).

[13] *Regions Bank v. Old Republic Union Insurance Co.*, No. 2:14-CV-517-VEH, 2016 WL 4366871, *4 (N.D. Ala. Aug. 16, 2016) ("'[T]he onus is upon the parties to formulate arguments,' *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995), and a failure to cite authority waives an argument. *See U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n. 13 (11th Cir. 2007).").

no weight. In *Morgan*, the Eleventh Circuit reviewed a district court's decision not to decertify before trial. *See Morgan*, 551 F.3d at 1245-47. In fact, the Eleventh Circuit specifically stated that "[it examined] the evidence before the court when it heard Family Dollar's motion to decertify." *See id.* at 1265 (citing another source). Accordingly, Cato's distinction here is contradicted by a simple reading of the Eleventh Circuit's opinion in *Morgan*. *See id.*

Finally, Cato argues that "[a] common job description and classification decision are not sufficient to maintain a collective action under the FLSA, particularly where clear differences relevant to a dispositive exemption defense exist." (Doc. 65 at 12-14). However, the Court finds that there is more here than merely a "common job description and classification decision." As the Court recounted above, there is evidence of a uniform, unbending company-wide policy that often divested store managers of decision-making authority in favor of district managers.

Even though the day-to-day experiences of store managers might vary somewhat, they were still doing the <u>same</u> job governed by the <u>same</u> corporate policies with <u>similar</u> experiences. The Plaintiffs are not identical, but a review of the record shows that they are similarly situated. Far beyond mere "'allegations and affidavits,'" the Plaintiffs met their burden through a developed record including depositions, procedural manuals, and a compensation handbook. *See Morgan*, 551 F.3d at 1261

(quoting another source). Accordingly, Cato's first argument fails.

### B.      The Nature of Cato's Defenses Do Not Preclude a Collective Action

Next, Cato argues that its "defenses are highly individualized." (*See* Doc. 65 at 14) (emphasis and capitalization omitted); (*see* Doc. 74 at 6-7). Cato points to three defenses: the executive exemption, the statute of limitations, and the difficulty of determining the number of hours worked for each Plaintiff. (*See id.* at 14-15). However, "[j]ust because the inquiry is fact-intensive does not preclude a collective action where plaintiffs share common job traits." *Morgan*, 551 F.3d at 1264.

Cato fails to persuade the court that any of their "defenses" prevent collective action in this case. Regarding the executive exemption, like the defendant in *Morgan*, Cato "applied the executive exemption across-the-board to every store manager." *See id.* The court in *Morgan* rejected the argument that the executive exemption was too individualized, and the Court here does as well. *See id.*

Further, "[a] defense based on the statute of limitations, including whether the FLSA's two-year limitations period for non-willful violations or three-year limitations period for willful violations applies, also does not preclude collective treatment." *White v. Baptist Mem. Health Care Corp.*, No. 08-2478, 2011 WL 1883959, *12 (W.D. Tenn. May 17, 2011) (citing another source); *see also Morgan*, 551 F.3d at 1265 n.47 (noting that "collective actions about overtime pay can be readily and fairly

managed," even in a case with a statute of limitations defense with 1,424 plaintiffs). This willfulness determination is appropriate for collective treatment. *See White*, 2011 WL 1883959 at *12 (citing another source).

Finally, the Court is not persuaded that it would be too difficult to determine the hours worked by the Plaintiffs. *Cf. Morgan*, 551 F.3d at 1263; *see also White*, 2011 WL 1883959 ("That a defendant, and a court, may be required to conduct individualized evidentiary inquiries into each opt-in plaintiff's FLSA claim does not necessarily make collective treatment improper.") (collecting sources). In fact, the record demonstrates that the parties have a pretty good start on determining the hours worked per week. (*See* Doc. 69-14) (showing the hours worked per week for numerous Plaintiffs). That this case might take a little more work than less complex cases is not a legitimate reason to decertify a class of similarly situated Plaintiffs. This collective action is warranted, and counsel should be able to manage the rigors of this litigation. *See Morgan*, 551 F.3d at 1263 ("[The defendant] has not shown clear error in the district court's finding that its defenses were not so individually tailored to each Plaintiff as to make this collective action unwarranted or unmanageable.") (footnote omitted). Accordingly, this argument fails.

**C.     Fairness and Procedural Considerations Do Not Weigh in Favor of Decertification**

Finally, the Court addresses Cato's argument that "[f]airness and procedural considerations also weigh heavily in favor of decertification." (*See* Doc. 65 at 16-17). This argument is predicated on the presumption that the Plaintiffs are not similarly situated. The Court determined that they are through its detailed and thorough factual findings above. The Plaintiffs met their burden. Accordingly, there is no unfairness in Cato preparing to defend against only 25 plaintiffs. To put this in perspective, Family Dollar Stores had to contend with 1,424 claims. *See Morgan*, 551 F.3d at 1265. "[G]enerally speaking, the size of an FLSA collective action does not, on its own, compel the conclusion that a decision to collectively litigate a case is inherently unfair." *Id.* The Court has confidence that Cato's counsel will be able to handle a significantly smaller case than that in *Morgan*. The purposes of these collective actions are to: "(1) [reduce] the burden on plaintiffs through the pooling of resources, and (2) efficiently [resolve] common issues of law and fact that arise from the same illegal conduct." *Id.* (citing *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). Those purposes are fulfilled through this collective action, and Cato suffers no unfairness.[14]

---

[14]  Cato cites to *Knott v. Dollar Tree Stores, Inc.* to argue that its due process rights are harmed through this collective action. (*See* Doc. 74 at 8) (citing *Knott v. Dollar Tree Stores, Inc.*,

Cato argues that *Morgan* is not fatal to their motion. (Doc. 74 at 2-3). However, the Court previously explained how *Morgan* is factually and legally persuasive. Cato also points to the recent decision from the United States Supreme Court in *Encino Motors, LLC*. (*See id.*) (citing *Encino Motors, LLC v. Navarro*, 138 S. Ct. 1134 (2018)). Cato cites this case for the proposition that "exemptions to the overtime requirement are to be given a 'fair reading,' meaning they are not to be construed too narrowly." (*Id.*) (citing 138 S. Ct. at 1142). Nothing in today's opinion reads the executive exemption too narrowly. Accordingly, fairness and procedural considerations do not persuade the Court to decertify the class.

## IV.   CONCLUSION

The Court undertook a detailed review of the evidence and considered the arguments. The Court is persuaded by the evidence and arguments set forth by the Plaintiffs that decertification would be inappropriate. However, the Court's decision today takes no position on the ultimate merits of the case, which could show a meritorious defense(s).

Cato's arguments verge on requiring identical plaintiffs with identical work experiences. That is not what the law requires. The law requires similarly situated

---

897 F. Supp. 2d 1230, 1241 (N.D. Ala. 2012)). However, the Court made different factual findings here and so finds that Cato's due process rights are not harmed here.

plaintiffs, and that is what this case presents. Cato's Motion is **DENIED**.

      **DONE** and **ORDERED** this the 19th day of June, 2018.

**VIRGINIA EMERSON HOPKINS**
United States District Judge